LEHIGH VALLEY RAILROAD COMPANY, PLAINTIFF IN ERROR, v. MILTON SNYDER, DEFENDANT IN ERROR.

1. When one enters into the employment of another under a written contract, his duty to his employer must be measured by its terms.
2. By the terms of the written contract the employe was to obey certain rules and regulations and such other reasonable regulations as a superintendent should afterwards make. *Held,* that the employe must receive notice of new regulations before he will be bound by them, but evidence to establish notice need not show an actual delivery to him of a copy, and evidence reasonably justifying an inference that he received notice thereof will be admissible.
3. By the same contract the employe became accountable for the safe delivery of the full weight of any cargo delivered to him for carriage, and was bound to be present at the weighing of the cargo by the consignee on delivery, and to see that proper weights were marked on the receipt, and the employer was authorized to retain in its hands any money due the employe, to an amount sufficient to cover any shortage in the cargo. It was also stipulated that an employe might be discharged for disobedience of an order of the superintendent. *Held,* that if the employer held no money of the employe to retain upon a claim for shortage, the superintendent could not lawfully order him to pay an amount for shortage which he disputed, and upon his refusal so to do could not lawfully discharge him from his employment.

On error to the Supreme Court.

Snyder, the defendant in error, brought this action in the Warren Common Pleas against the Lehigh Valley Railroad Company (lessees of the Morris canal), the plaintiff in error, to recover (1) freight earned in carrying coal on the canal under the employment of plaintiff in error; (2) damages for unlawful discharge from such employment.

It appears by the bills of exceptions that Snyder's contract of employment with the railroad company was in writing, and as follows:

"OFFICE MORRIS CANAL

"(Lehigh Valley Railroad Company, Lessees),

"PHILLIPSBURG, N. J., April 2, 1891.

"Milton Snyder, of Phillipsburg, N. J., is hereby employed to run boat No. 468 (or such other boat as the proper officers of said company may assign to him in lieu of said boat No. 468) for the Lehigh Valley Railroad Company, lessees of the Morris Canal, during the boating season of 1891, ending December 15, 1891, under and subject to the Rules and Regulations of the Morris Canal, edition of March 1st, 1891, a copy of which is hereby delivered to him.

"JAMES E. MOON,<br>"*Agent.*<br>"MILTON SNYDER.

"Witness:
    "D. S. SWEENEY."

A copy of the rules and regulations mentioned therein was delivered to Snyder on the execution of the contract.

Among the rules and regulations were the following:

"6. The Captain will be held strictly accountable for the safe delivery of his cargo, full weight, to whatever destination he may be ordered by the Superintendent or Agents, it being understood that the destination may be changed while the cargo is on its way; and, should the cargo fall short in weight, the

Company reserves the right to retain from the Captain's freight, or any other moneys due or which may become due to the Captain, an amount sufficient to cover the value of said shortage."

"8. The boatmen will be required to furnish and attend the guy line while unloading at destination, or pay whatever may be the charge for so doing, and must be present personally and attend to moving and fastening their boats while unloading, and also when their cargoes are weighed out, to ascertain where and how weighed and to see that the proper weights are marked on their receipt, or a statement given them of their weights. As soon as discharged, Captains must have their receipt properly filled out and signed by the Consignee, and personally present it for settlement."

"48. The Superintendent of the Company may, at any time, make such reasonable regulations as he may deem advisable, which must be obeyed the same as the General Regulations."

"Refusal to obey the orders of the Superintendent or his Agents, and drunkenness or abusive conduct, shall be cause (at the option of the Superintendent) for the discharge of any Captain."

It further appeared that the following notice—

"MORRIS CANAL OFFICE,
"L. V. R. R. Co.,
"May 20, 1891,
"PHILLIPSBURG, N. J.

"NOTICE TO CAPTAINS.

"From this date, Article 6 of the General Regulations relating to cargoes falling short in weight will be enforced, unless Captains can bring positive proof that it was incorrectly weighed out and that they witnessed the weighing of the entire Cargo, keeping a tally of the same, which must be produced when settling their freight.

"By order of
"A.                         WILLIAM I. POWERS, *Supt*,"

was posted on the bulletin in the collector's office, where such orders were customarily posted for the inspection of captains and boatmen, and that Snyder, who had then been some time in his employment, was in the office after the notice was posted.  Upon objection the offer of the notice was overruled and exception taken.

Other exceptions were taken to the charge and refusals to charge.

The judgment of the Common Pleas was in favor of Snyder.  Having been removed to the Supreme Court, the judgment was there affirmed and this writ of error was taken.

Argued at November Term, 1893.

For the plaintiff in error, *Robert H. McCarter.*

For the defendant in error, *Bartlett C. Frost.*

The opinion of the court was delivered by

MAGIE, J.  It appears from the bills of exception that the principal contest on the trial of this cause was upon the question whether Snyder was rightfully discharged from his employment by the railroad company.

It further appears that, from the evidence admitted by the court below, it was open to the railroad company to contend, and it did contend, that it had loaded on Snyder's boat a cargo of coal consigned to the Lehigh Valley Coal Company, weighing seventy-two tons two hundredweight; that cargoes thus consigned were not weighed on delivery, which fact Snyder knew; that during the transit of this cargo the consignment was changed pursuant to the rules and regulations of the railroad company, and the substituted consignee was one Lehman; that upon delivery to Lehman the cargo was weighed and contained but sixty-eight tons; that Snyder did not attend at or observe the weighing of the cargo by Lehman; that the railroad company required Snyder to account·

for the shortage of four tons two hundredweight; that its superintendent ordered Snyder to do so and he refused, accompanying his refusal with vile, indecent and abusive language, addressed publicly to the superintendent; that on other occasions Snyder had been guilty of abusive conduct to agents of the railroad company while in the discharge of their duties, and that he was discharged thereupon for his refusal to obey the superintendent's orders and for his abusive conduct.

The contention was that this discharge was justified by the terms of Snyder's special contract of employment.

The attitude of the Common Pleas upon this contention is shown by the following portion of the charge, which was excepted to and on which error has been assigned:

"The contract between the plaintiff and defendant, upon which suit was brought, is a contract of hire and not of bailment, strictly speaking. The rules and regulations are not absolutely necessary as imposing a duty on Snyder to safely deliver his cargo. That duty the law infers. If the rules and regulations are to be construed literally, then nobody but a fool would sign them."

While this statement is not free from obscurity, it is obvious that it must have been designed to instruct the jury that Snyder's duty in respect to his cargo was such as arose, not upon his special contract of employment, but only such as the law infers from the relation of master and servant.

This was clearly erroneous. It was an admitted fact in the case that Snyder entered his employment under a written contract, and his duty to his employer was to be discovered in and measured by its terms. Those terms could not be disregarded in determining his duty, in the absence of proof of incapacity to contract.

By the terms of his contract, Snyder was to obey not only the rules and regulations there furnished him, but also such reasonable regulations as the superintendent should afterwards make. Obviously, however, he could not be held bound by new regulations unless he had received notice of them.

It was shown that the superintendent had made a new regulation respecting the duty required by article 6 of the general regulations, and it became a question whether Snyder had notice of it.

The Common Pleas rejected evidence offered by the railroad company to show such notice, which evidence is set out in the statement preceding this opinion. In this rejection there was also error, and the exception thereto is well taken. Evidence to establish notice of a new regulation need not show an actual delivery of a copy thereof into the hands of the person to be notified. It will be admissible if it justifies a reasonable inference that he received notice. *Francis* v. *Kansas City and St. Joseph Railroad Co.*, 19 *S. W. Rep.* 935; *Wilson* v. *Trenton*, 24 *Vroom* 645. Evidence that the copy was posted on the bulletin, where other notices were, by the rules and regulations, to be posted for such information, coupled with proof that Snyder had subsequently been in the office where the bulletin board was, ought to have been admitted and in the absence of denial or counter-proof would have justified the inference that he had notice.

Another assignment of error is directed to the exception taken to the refusal of the Common Pleas to charge, as requested, that if the jury believed that Snyder had refused to obey the orders of the superintendent by refusing to settle his freight according to his contract, or had been guilty of the abusive conduct testified to, his discharge was justifiable.

As before stated, the measure of Snyder's duty is to be learned from his contract of employment.

By section 6 of the rules and regulations he was accountable for the safe delivery of the full weight of any cargo delivered to his boat for carriage.

By section 8 he was bound to be present when the cargo was weighed out on delivery to the consignee, " to ascertain where and how weighed, and to see that the proper weights are marked on the receipt." This duty was of great consequence to his employer to prevent it from being injured by

careless or fraudulent weighing on the part of the consignee. This duty Snyder wholly failed to perform as to this cargo.

But these terms must be construed with reference to the subject-matter of the contract, viz., the carriage and delivery of coal. Coal, when loaded, is weighed by the railroad company. The captain may be present and see that the weighing is properly done. If present and he does not object, or if absent and he accepts a manifest specifying the amount of load, he doubtless becomes chargeable, *prima facie*, with that amount. But it would be open to him to prove that, by error or mistake, too great a weight was entered in the manifest.

So coal is weighed by the consignee on delivery. The captain not only could be, but was bound to be, present, and to see that it was weighed correctly and a receipt for its true weight was given. If, in breach of his duty, he absented himself from such weighing, and accepted a receipt for the amount so weighed out, he would no doubt be chargeable, *prima facie*, in a settlement with his employer, with the amount of shortage. This results from his agency for his employer and his dereliction of duty. But it would also be open to the captain to prove that, by error or mistake, the consignee receipted for a less weight than he actually received.

Another clause contained in section 6 provides that the company may retain from the captain's freight, or other moneys due him, an amount sufficient to cover the value of the shortage.

Construed together, these provisions give the right to the employer to retain the value of the shortage *prima facie* shown. If there is no money in its hands upon which to exercise the right of retention, it has its action against the captain for the value of the shortage. If there is money improperly detained on this claim of right, the employe has his action therefor. In either action whether or not there was a shortage can be determined.

Applying this construction of the contract to the case in hand, it is clear that Snyder was *prima facie* liable to account for the value of the shortage of four tons and two hundred-

weight, and the railroad company might retain from him the value thereof out of moneys in its hands. If it had none it could sue Snyder for the value of the shortage. If Snyder claimed that money was improperly retained, he could sue the company, and in either case the question would be whether there was an actual shortage.

But the instruction under review assumes that if the company has no money in its hands to retain for shortage, its superintendent may lawfully order the captain accountable therefor to pay such shortage, and the claim is that, upon disobedience of such an order, the captain might properly be discharged.

The stipulation that an employe may be discharged for disobedience of the order of the superintendent, must be limited to such orders as the superintendent could lawfully give.

But an order to pay such shortage, at least in a case where the fact that there is a shortage is disputed, is plainly not one within the superintendent's power. The employe has the right to have the question of fact determined by a competent tribunal, and not by the mere arbitrary act of his employer interested in its determination.

The result is that the instruction now under consideration was properly refused. It was asked upon alternative grounds, and as it would have been improper upon one of those grounds, it could not be rightfully given. Had the request been confined to the ground of abusive conduct, it would probably have been proper. But the court was not bound to sever the two propositions which were combined in the request or on which the instruction was asked.

The result, however, is that, for the errors first pointed out, the judgment must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, ABBETT, DEPUE, GARRISON, MAGIE, VAN SYCKEL, BOGERT, KRUEGER, PHELPS, SMITH. 10.