YVETTE VIOLETTE *vs.* CHARLES E. RICE & others.

Suffolk.   January 24, 1899. — March 3, 1899.

Present: HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Contract — " Services " — Evidence.*

At the hearing of a bill in equity to reach and apply property in payment of damages for an alleged breach of a contract to employ the plaintiff in a certain part in a theatrical play, it appeared that the contract, which was in writing, engaged the plaintiff " to render services at any theatres," she agreeing " to conform to and abide by all the rules and regulations adopted by " the defendant "for the government of said companies"; and that on the back of the contract were "rules of the " defendant's " companies," one of which was, " No person shall . . . refuse a part allotted to him or her by the manager " on certain penalties. *Held,* that evidence that at the time of signing the contract it was agreed that the word "services " meant services in the particular part, was inadmissible.

BILL IN EQUITY, filed November 20, 1896, in the Superior Court, against Charles E. Rice and Edward E. Rice, copartners as C. E. and E. E. Rice, and others not material to be named, to reach and apply property in payment of damages for an alleged breach of a contract of employment. Hearing before *Sheldon*, J., who ordered a decree to be entered dismissing the bill; and, the plaintiff having appealed, reported the case, at the request of the parties, for the determination of this court. The facts appear in the opinion.

*W. R. Sears*, for the plaintiff.

*T. J. Barry*, for the defendants, submitted the case on a brief.

HOLMES, J. This is a bill in equity to reach and apply property which is alleged to have been conveyed in fraud of the plaintiff, claiming damages for a breach of contract to employ the plaintiff in the part of Bertha Gessler in a play called Excelsior Junior. The contract was in writing, and engaged the plaintiff in general terms " to render services at any theatres," etc., the plaintiff agreeing " to conform to and abide by all the rules and regulations adopted by said Edward E. Rice for the government of said companies." On the back of the contract, which seems to have been put in by the plaintiff, were " Rules of the Rice Burlesque Companies," one of which was, " No person shall . . . refuse a part allotted to him or her by the manager" on certain penalties, including discharge at the option of the manager. These rules were not set out in the copy of the contract annexed to the bill and admitted by the answer, but no objection seems to have been made on this ground, and, if any objection had been made, of course an amendment to the answer would have been allowed. At the hearing, evidence was taken *de bene* that at the time of signing the contract it was agreed that the general word " services " meant services in the particular part named. This evidence ultimately was rejected, and the only question is whether it should have been admitted.

We are of opinion that the evidence could not be received. The plaintiff accepted the defendants' rules by signing the contract, whether she knew them or not. It is not a question here whether an indorsement upon a contract, not referred to upon the face of the instrument, is part of the contract by virtue of

the indorsement alone.  The plaintiff expressly adopted any rules which there might be, within the reasonable import of the name, even though not set out in the contract, and if she adopted them in the dark she was bound none the less.  See *Lehigh Valley Railroad* v. *Snyder*, 27 Vroom, 326.

With or without the rules, the engagement to render services expressed a general employment, which could not be limited to a single part without contradiction.  For to give evidence requiring words to receive an abnormal meaning is to contradict. It is settled that the normal meaning of language in a written instrument no more can be changed by construction than it can be contradicted directly by an avowedly inconsistent agreement, on the strength of the talk of the parties at the time when the instrument was signed.  *Black* v. *Bachelder*, 120 Mass. 171. *Flynn* v. *Bourneuf*, 143 Mass. 277, 278.  *Chemical Electric Light & Power Co.* v. *Howard*, 150 Mass. 495.  *Goode* v. *Riley*, 153 Mass. 585, 586.  *Poole* v. *Massachusetts Mohair Plush Co.* 171 Mass. 49, 52.  *Grimston* v. *Cuningham*, [1894] 1 Q. B. 125.  When evidence of circumstances or local or class usage is admitted, it tends to show the ordinary meaning of the language in the mouth of a normal speaker situated as the party using the language was situated, " but to admit evidence to show the sense in which words were used by particular individuals is contrary to sound principle."  *Drummond* v. *Attorney General*, 2 H. L. Cas. 837, 863.  " If that sort of evidence were admitted, every written document would be at the mercy of witnesses that might be called to swear anything."  *Nichol* v. *Godts*, 10 Exch. 191, 194.  To similar effect, Shaw, C. J., in *Brown* v. *Brown*, 8 Met. 573, 577.  *Tymason* v. *Bates*, 14 Wend. 671, 675.  The case of *Keller* v. *Webb*, 125 Mass. 88, goes a good way, but was not intended, we think, to qualify the principle settled by the earlier and later Massachusetts cases, some of which we have cited.  In that case evidence of conversation was admitted to show that " casks " in a written contract meant casks of a certain weight.  It was assumed that the contract meant casks of some certain weight, but did not state what, and thus that the evidence supplemented without altering the written words.  A similar explanation applies to *Stoops* v. *Smith*, 100 Mass. 63.  The other cases cited do not need particular notice.        *Decree affirmed.*