## George S. Jones *vs.* Stephen Dow & another.

Suffolk. March 5. — June 30, 1886. W. Allen & Holmes, JJ., absent.

A negotiable promissory note of a corporation, signed in its name by P., treasurer, and payable to the order of P., was indorsed by the payee for the accommodation of the maker. On the back of the note was the following, signed by the defendants: " We hereby guarantee the payment of the within note." *Held,* that the defendants' contract was not with the payee, but with the first holder for value. *Held, also,* that the guaranty was not within the statute of frauds.

The declaration in an action alleged that a corporation, by its treasurer, P., made a promissory note for $5000, payable to P., for the purpose of negotiating it for the benefit of the corporation; that P. indorsed the note, which was approved by the directors of the corporation; that the defendants, who were directors, "for said purposes and for said considerations," indorsed upon the note the following contract: " We hereby guarantee the payment of the within note; " and that the note was then, before its maturity, sold and delivered to the plaintiff for a valuable consideration paid by him to P. At the trial, the plaintiff testified that P. asked him to discount the note; that he had the transaction with him as treasurer; that P. said the money was going to the corporation; that he let P. have $1000, and took his individual note for the amount, with the note for $5000 and a bill of sale of a lot of railroad ties as collateral security, with a power of sale on default of payment within five days; that he afterwards made two similar loans of $250 each, taking P.'s individual note for each with the same security; that these loans were not paid when due; and that payment was demanded. *Held,* that sufficient consideration had been shown to support the action on the guaranty; that there was no variance between the declaration and the proof; and that the testimony of the plaintiff was admissible for the purpose of identifying the plaintiff as the first holder for value and the promisee in the guaranty, and also to show the consideration.

CONTRACT, against the Boston and Mystic Valley Railroad Company, Sydney P. Pratt, P. W. Locke, Stephen Dow, Nathan P. Pratt, and J. P. Thompson. The declaration alleged that the Boston and Mystic Valley Railroad Company, by its treasurer, Sydney P. Pratt, made a promissory note for $5000, dated October 15, 1878, payable four months after date, with interest, to the order of Pratt, for the purpose of being sold in the market in order to raise money to meet the liabilities of said company, which note was at the same time approved by the directors, (a part of whom were defendants in this action,) as appeared by a writing on the note; that, at the same time, the note was indorsed by Pratt, waiving demand, notice, and protest; that, at the same time, for said purposes, and for said considerations, the other defendants, who were directors, and who approved the

note and transactions, made and entered into the following contract, which they then and there indorsed upon the note: " We hereby guarantee the payment of the within note, waiving demand, notice, and protest;" that the note, being in said condition, was sold and delivered to the plaintiff for a valuable consideration, paid by him to Pratt as treasurer of said company; that the plaintiff received the note, before the same became due and payable, soon after the making and approval of the note and the indorsement thereof, and said contract by the defendants, which were all parts of one and the same transaction, done for one and the same purpose, to wit, to raise money for the purposes of said railroad company, by means whereof the other defendants became liable and promised to pay said note at its maturity to the lawful holder thereof, which lawful holder was the plaintiff; and that the note was not paid by said company, or by Pratt, at the date of its maturity, nor ever since, nor have the other defendants, or either of them, or any other person, paid said note, but have totally neglected and refused so to do.

Answer: 1. A general denial. 2. That the note was materially changed after its execution and guaranty, without the knowledge or consent of the defendants. 3. The statute of frauds. 4. A denial of the genuineness of the defendants' signatures, and a demand for proof of the same.

After the former decision overruling a demurrer to the declaration, reported 137 Mass. 119, the case was tried in the Superior Court, before *Gardner*, J., who allowed a bill of exceptions, in substance as follows:

The trial proceeded against Dow and Thompson only.

The plaintiff testified, that about December 1, 1878, he met a broker, who took him to the office of the railroad company, and he there saw S. P. Pratt and P. W. Locke; that they showed him a promissory note for $5000, and asked him if he could discount one of these notes, or get one discounted; that there would be six notes of $5000 each; that George P. Baldwin had one; that they wished others discounted, and wanted him to do so; that they gave him names to look the notes up; that he saw Baldwin, who showed him his note, and said the parties were responsible; that he met S. P. Pratt in the office of one

Butterworth, the plaintiff's counsel, on December 13, 1878, and received the note in suit; that he lent at that time $1000, and took the note, a copy of which is printed in the margin,* and received, as collateral security, the note in suit, and a bill of sale of ties, a copy of which is printed in the margin; † that about January 4, 1879, he made another loan of $250, and took a promissory note of that date (a copy of which was annexed to the exceptions, and was in form similar to the $1000 note); and that a third loan of $250 was made before or after the loan of January 4, and a note similar to the note of that date taken, which was mislaid or lost.

The plaintiff was asked by his counsel to state all that was said and done at the interview between him and Pratt, when the plaintiff purchased the note in suit, to which the defendants objected; but the judge allowed the question to be answered, and the plaintiff thereupon testified as follows: "Sydney P. Pratt took a writing from me, of which I kept no copy. I made this loan on the note, and gave him a writing in relation to the transaction. As near as I can recollect, I made the transaction with Sydney P. Pratt, as treasurer of the company, and had the note from him as treasurer of the company. He said he had a note, — a Mystic Valley note, — which he wished to have

---

* "$1000.                                   Boston, December 13th, 1878.

"Five days after demand and payable five days after notice, with interest at the rate of two per cent per month, I promise to pay to George S. Jones, Esq., or order, one thousand dollars, for value received. I having deposited with this obligation, as collateral security, note of the Boston and Mystic Valley R. R. Co. for $5000, dated October 15th, 1878, payable four months after date, and a certain lot of railroad sleepers, comprising all the sleepers belonging to me on Mystic Wharf, in Somerville, consisting of not less than six thousand sleepers, with authority to sell the same without notice, either at public or private sale or otherwise, at the option of the holder or holders hereof, on the non-performance of this promise, he or they giving me credit for any balance of the net proceeds of such sale remaining, after paying all sums due from me to the said holder, or holders, or to his or their order.

                                                "Sydney P. Pratt."
†                                       "Boston, Mass., Dec. 15th, 1878.

"For and in consideration of $1000, to me paid by George S. Jones of Boston, I hereby sell and convey unto him all and singular whatever sleepers and railroad ties belonging to me on the Mystic Wharf in Somerville, being not less than six thousand.

                                                "S. P. Pratt."

me discount. I asked to see it. He showed me the note. I looked it over and asked him if it was all right. He said it was, and that he was treasurer of the company, and that the money was going to the company. He told me he was treasurer of the company; and that this transaction was to raise money on behalf of the company. There was a verbal agreement that I should give him ten days' notice if I wanted the money, and, if he paid me the money, he was to give me ten days' notice, so that I might have a chance to loan it again; and if it was not forthcoming after I gave him the ten days' notice, I should come into full possession, and everything was to be mine, if he did not so carry out his agreement; and I notified him, and he did not pay it."

On cross-examination, the plaintiff testified that he did not know whether the note he saw at the time he first met Pratt and Locke was the one now in suit; that he made no inquiry about the authority under which the note purported to be issued; that Baldwin showed him two notes, dated October 5 and October 15; that he made many inquiries, and was told there were six notes issued, and he found that true; that he paid $1000 on December 13, in checks payable to Sydney P. Pratt; that he could not say how he paid the money for the other two notes; that he saw Locke after the protest, and showed him the note; that he said nothing about its not being genuine, but did at some time speak about the date being changed; that he said he was counsel for Dow, and could collect the note for the plaintiff; that the plaintiff met H. C. Hall in Butterworth's office; that there was talk that no notes were issued except on the 15th; that Hall wanted to know if the plaintiff's was dated the 15th, as, if so, it could not be genuine; and that the plaintiff expected an offer for the note, but they only offered to put him in possession of the sleepers by helping him in a suit he was to bring.

The plaintiff offered in evidence the writing declared upon, to which the defendants objected, on the following grounds: 1. That the guaranty was an agreement to pay the debt of another, within the meaning of the statute of frauds. 2. That the name of the plaintiff did not appear in the writing, and no written evidence was offered that it was intended for the plaintiff. 3. That no consideration had been shown to support

an action by the plaintiff against the defendants. 4. That the evidence discloses a transaction between Pratt personally and the plaintiff, both parties treating the writing as Pratt's own property, and that the guaranty was not negotiable. These objections were severally overruled.

It appeared on behalf of the defendants, that, in 1878, they were directors of the Boston and Mystic Valley Railroad Company, of which Dow was president, and that S. W. Twombley, Nathan P. Pratt, and P. Webster Locke were the remaining directors; that on October 3, 1878, the directors voted "that the treasurer be and hereby is authorized and directed to borrow a sum of money not to exceed thirty thousand dollars, and to give the notes of the company therefor in such sums, and on such time not less than three months, and at such rates of interest not in excess of eight per centum per annum, as shall be necessary to enable him to obtain the funds. But no note shall be issued by him that is not approved by at least three of the directors of the said Boston and Mystic Valley Railroad Company;" that, on October 5, all the directors and the treasurer, S. P. Pratt, met at the office of the company, and upon Pratt's promises, hereinafter set forth, six promissory notes of $5000 each, each dated October 5, 1878, and payable four months after date, to the order of Sydney P. Pratt, with interest at the rate of five per cent per annum, were drawn and signed by the company, approved by Twombley, Thompson, and Locke as three of the directors, indorsed by Sydney P. Pratt, and the following writing was upon the back of each note, signed by Dow, Nathan P. Pratt, Thompson, and Locke: "We hereby guarantee payment of the within note, waiving demand, notice, and protest;" and that these notes and guaranties were delivered to S. P. Pratt.

At the trial, Dow produced three notes, G. Morse, as administrator of the estate of George P. Baldwin, two notes, and E. L. Chaffee, as treasurer of the Boston Loan Company, one note, which six notes, the dates of four of which had been changed to October 15, were identified by Dow, Thompson, Twombley, and Locke as the notes signed October 5, were admitted by the plaintiff to be genuine, and were used by both parties as standards of handwriting for comparison.

Dow, Thompson, Twombley, and Locke each testified that these six notes were the only notes issued on October 5, or in pursuance of the vote of October 3; that no other notes were ever signed by either of them as approving directors, and no other notes were guaranteed by them, or either of them; and that no other notes were ever issued by the company, except one payable to Stephen Dow and one payable to Nathan P. Pratt; and each testified that his name upon the note in suit, wherever it appeared, was not his signature, and not written by him or with his knowledge; that he never saw the note in suit until it was annexed to interrogatories to the defendants about three weeks before the trial; that the note in suit was never issued by the company, or authorized to be issued; and that the company never received any money from the note in suit, to his knowledge.

Dow, Thompson, and Twombley each testified that they never assented to any change of the date of any of the notes from October 5, and never knew that the date of either of them had been changed until long after; and Locke testified that he knew that the date of some of them had been changed, and personally consented to the change, but had no knowledge that either of the other directors consented.

Solon Bancroft, called by the defendants, testified that he was a receiver of the Reading Savings Bank, and had become acquainted with the signature of Nathan P. Pratt, and that the name Nathan P. Pratt upon the note in suit was not the signature of said Pratt; and on cross-examination he testified that Sydney P. Pratt was clerk in the Reading Savings Bank, of which his father Nathan was treasurer, and that a large number of signatures and writings had been forged, in connection with the transactions of the bank, and among the forgeries was the name of Nathan P. Pratt; and that shortly after the discovery of these forgeries Sydney P. Pratt ran away, and had not been heard of since.

J. P. Thompson, one of the defendants, further testified, that, before the notes were made, S. P. Pratt urged them to guarantee the notes, and stated that he had a party who was ready to take them, and furnish the money at once; that with this money they could so far complete the road that the mortgage bonds

could be placed; that bonds would be taken in payment for the notes when they became due, and that he would see that they should never be called upon to pay anything upon them; that upon these promises he signed the guaranty ; and that he did not know the plaintiff, and had never had any conversation with him, and did not know he held a note, or alleged note, until receiving notice of protest.

E. L. Chaffee, called by the defendants, produced a note for $5000, dated October 15, 1878, which was put in evidence as one of the six notes executed on October 5, having genuine signatures but an altered date; and, on cross-examination, he testified that he was the treasurer of the Boston Loan Company; that about October 15 he lent Sydney P. Pratt $5000, and received as collateral security three notes of $5000 each, of which that produced was one ; that, soon after, Pratt paid him $4000, and he returned him the other two notes; and that he could not identify the notes he returned, but they were similar to the one produced.

S. W. Twombley further testified, that he was occupied principally in settling land damages in connection with the road, and knew nothing about the books; that S. P. Pratt had talked with him and the directors generally about guaranteeing the notes; that Pratt said he wanted to raise $30,000, and with that he could complete the road, and the only way he could get that amount was on six notes, on which he was promised the money by a banker near by, whom he named, and, if we would guarantee the notes, we should never see or hear from them; that he said, " You will never hear from the notes; I have got a man to take them, and I will have the money to-morrow, or in a day or two ;" that, with that understanding, the notes were made; that, at the time of signing, he noticed the dates particularly, and they were each October 5, and he never signed any other note, and had no knowledge of any other notes; and that this loan did not relieve the company from indebtedness, because they did not get it.

P. W. Locke further testified, that there was no such interview as the plaintiff described about December 1, 1878, at which he was present; that he did not know of any negotiations with the plaintiff to take one of the notes, and did not

know of the transaction in Butterworth's office until long after; that the plaintiff never showed him the note, and he never told the plaintiff that he was counsel for Dow and could collect it; that the plaintiff did at one time cover the body of the note, and, showing him the signature, ask if that was not his signature; that he first learned that the plaintiff held a note as collateral for $1500 he had lent Pratt, but never regarded it as binding upon the guarantors, and had always believed it to be one of the six notes of October 5; that when those notes were signed, S. P. Pratt told the directors that $30,000 would so far complete the road that the mortgage bonds could be placed without difficulty; that we could have the money, and he then had a party ready to advance the money, and, if we would give him the guaranty, he would protect it, and the guarantors should never hear from it; that he, Locke, was counsel for the road, and this guaranty was drawn to run to Pratt, and upon his promises to furnish the money; and that he told the plaintiff, that, if he had a note dated October 15, it was a changed note, as no note of that date was ever issued.

Stephen Dow further testified, that he several times refused to sign any note to go out upon the street; that, before these guaranties were signed, Pratt said he had a man who was going to take the notes and keep them in his possession, and we should never be called upon, and, when the time came, they would be paid and taken up; that he repeatedly asked Pratt to return the notes after he failed to get the money, and he always said they should come back; that two of the notes he produced he got from one Sheldon; that he paid $5000 for one, and the note with the changed date was surrendered with the other, and the third note he paid $3000 for, in ignorance that the date was changed; that after October 5, until the trial, he had never seen the notes held by the Boston Loan Company and the Baldwin estate, and never saw the plaintiff's note until the time stated previously; that he knew there was a forged note in existence, but did not know which it was until he saw this one; and that he never saw the plaintiff until after this action was commenced, and then saw him one Sunday at his hotel in Lynn, while out riding; and that he afterwards met him at the office of one Brooks.

H. C. Hall, called by the defendants, testified that he became treasurer of the company in 1879, after S. P. Pratt had absconded; that he endeavored to find out what was the financial standing of the company; that in his efforts to do so he interviewed each of the directors, and was told by each of them that only six notes had been issued by the company, each dated October 5, and that they never signed or guaranteed any notes of the company except those six notes; that he found seven alleged notes in existence, all of which he saw, except the one held by the plaintiff, and one dated October 15, in the possession of Baldwin; that Locke told him the plaintiff held a note which he had taken as collateral, with other things, for about $1500 lent Pratt; that as treasurer, and while negotiating a sale of the road, he made a schedule of all the possible liabilities of the company, and included the plaintiff with a possible claim of $1500; that he could not find from the books of the company, or from any other source, that the company had received or used any money after November, 1878; that the books of the company kept by Pratt were manifestly incorrect, and wholly failed to show the actual transactions of the company; that he had several interviews with the plaintiff, and told him that one of the notes out was a forgery, and asked to see the note, that he might satisfy himself as to its genuineness; that the plaintiff always refused to show him the note; and that he never saw it until about three weeks before the trial, and then pronounced it a forgery.

The plaintiff, being recalled, produced three checks given by him to Pratt as part of the $1000, each payable to Sydney P. Pratt, and dated December 13, 1878, for the sums respectively of $601, $150, and $99.

F. S. Nickerson testified for the plaintiff, that, in December, 1878, he held for collection a claim of a person against the company for work done upon the road; and that about December 13 he received from S. P. Pratt in settlement of that claim the above-mentioned check for $99.

In rebuttal of the testimony of F. S. Nickerson, Hall testified that the person for whom Nickerson said he received the money from Pratt never worked for or was under contract with the road, and that the company could not have owed him anything;

that this person worked for sub-contractors under Hall, who was himself a contractor; and that these sub-contractors had been paid in full by himself.

George T. Sheldon, called by the plaintiff, testified that he received from Sydney P. Pratt two of the six notes which had been produced as made by the company, on October 5, 1878; and that they were delivered to Hall or Dow after protest, upon payment to him of $5000.

There was evidence on the part of the plaintiff, from several persons who had seen the defendants Dow and Thompson write, and from experts in handwriting, tending to show that the signatures of Dow and Thompson were genuine, as well as similar evidence from other persons and experts to the contrary. There was no evidence in the case of more than six notes being issued by the company in accordance with the vote of October 3, nor of more than six notes being approved, nor of more than six notes being guaranteed by the defendants, except as the testimony is herein reported.

The defendants asked the judge to rule that there was no evidence of any consideration for a guaranty by the defendants to the plaintiff; that there was no evidence that the plaintiff was the first holder for value of the note in suit; that there was no evidence of a contract between the plaintiff and the defendants; and that there was a fatal variance between the evidence and the declaration. The judge refused to give these rulings.

The jury returned a verdict for the plaintiff; and found specially, in answer to questions submitted to them by the judge, that the names of Dow and Thompson, as guarantors upon the note, were not forged. The defendants alleged exceptions.

*W. C. Cogswell,* ( *O. T. Gray* with him,) for the defendants.

*S. H. Phillips,* for the plaintiff.

MORTON, C. J. Most of the questions presented by the bill of exceptions have been previously decided by this court.

The case of *Baldwin* v. *Dow,* 130 Mass. 416, was an action upon a promissory note and guaranty, which was one of the same series of notes with the note in suit, in the same form, and issued under like circumstances. It was there held that the contract of the defendants was not with the payee of the note, but with the first holder for value who took the note with the guaranty

upon it; and that the contract was to be interpreted as if, when the plaintiff paid the money to the corporation, all the parties were present, and then signed and delivered the note and guaranty in the present form. When the case at bar was before us upon demurrer, the same principle of interpretation was reaffirmed, and it was held that the declaration sufficiently set out a guaranty of the note for a sufficient consideration to the plaintiff, as the first holder for value. *Jones* v. *Dow*, 137 Mass. 119.

At the trial in the Superior Court, the evidence tended to show the consideration alleged in the declaration, and was sufficient to justify the jury in finding that the promise of the defendants was to the plaintiff.

The defendant contends that the guaranty is insufficient to satisfy the statute of frauds, because it does not contain the name of the plaintiff as the promisee.

It is true that, in order to satisfy the statute of frauds, it is necessary that the memorandum should show who are the parties to the contract, but it is sufficient if this appears by description instead of by name; and if the promisor or promisee is described, instead of named, parol evidence is admissible to apply the description, and identify the person who is meant by it. Benjamin on Sales (4th Am. ed.) § 237, and cases cited. *Gowen* v. *Klous*, 101 Mass. 449.

The evidence of the circumstances under which the plaintiff took the note in suit, objected to by the defendants, was competent to identify the plaintiff as the first holder for value and the promisee in the guaranty, and also to show the consideration. *Baldwin* v. *Dow*, *ubi supra*.

The evidence in this case justified the jury in finding that the plaintiff was the first holder for value, and that there was a valid promise made to him by the defendants. We are of opinion that none of the defendants' exceptions can be sustained.

*Exceptions overruled.*