FRANCES DRAKE *vs.* ROLLIN H. ALLEN & another.

Suffolk.　March 8, 1901. — May 24, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Evidence*, Oral affecting writings.

In an action by an actress against the proprietor of a theatre, to recover for the breach of an oral agreement to employ the plaintiff during the fall and winter season of a certain year, the plaintiff was allowed to testify to a conversation with the defendant, which resulted in her signing a written contract for the summer season containing a provision that it might be terminated by either party by two weeks' notice in writing, and also resulted in an oral agreement for the following fall and winter season from which the two weeks' notice clause was by special agreement omitted. *Held*, that the defendant was in no way harmed by the admission of the evidence of the conversation, by which the plaintiff did not seek to vary or control the written contract, but merely to show the circumstances under which the oral agreement was made.

CONTRACT by an actress for breach of an alleged oral agreement to employ the plaintiff at the defendants' theatre, for the fall and winter season of 1898 and 1899, thirty-five weeks, at a salary of $100 a week. Writ dated September 19, 1898.

At the trial in the Superior Court, before *Bishop*, J., the plaintiff obtained a verdict for.$1,789.48 ; and the defendants alleged exceptions, which related wholly to the admission by the judge against the defendants' objection of the testimony of the plaintiff in regard to a certain conversation between her and one of the defendants. The general facts of the case are stated in the opinion of the court.

The evidence which was the subject of the exceptions was as follows :

" *Q.* Did you see him [J. Herbert Emery, one of the defendants] after that? *A.* Yes, sir ; in a few days, I don't know how many, I found a contract in my box one evening when leaving the theatre, the 9th or 10th of June. I took the contract home, and looked it over, and in the morning I brought it back to Mr. Emery. — *Q.* Was that the contract [showing witness a paper] ? *A.* Yes, sir. — *Q.* What was said at that time ? " The counsel for the defendants objected to anything concerning the summer season, but the judge admitted the. question. The defendants' counsel then said : " I suppose the things which are important are the conversations in relation to the hiring of this plaintiff for the fall and winter season of '99. Any conversation which she had in relation to the summer season, which is in the written contract, it seems to me is immaterial." The judge replied : " It certainly is, if standing by itself ; but if part of the conversation related to the summer and winter seasons both, I suppose it must go in. I will see what it is. — *Q.* Now, will you state the conversation you had with him at that time ? *A.* Yes, sir. I said, ' Mr. Emery, there is no line of business indicated in the contract.' He inserted a clause, ' Juvenile business when Miss Lawrence is on the bill, and leading business when Miss Lawrence is out of the bill.' " This was objected to by the defendants. The contract was handed to the judge for examination and marked as an exhibit. The judge admitted the evidence. The defendants excepted to the admission of the preceding answer, and of any conversation concerning the summer season. — " *Q.* Is that what was written in ? *A.* Yes, sir ; then I said, ' Mr. Emery, there is a two-weeks' clause in the contract,' and he said, ' That is only a matter of form. The contracts are all made out that way ; but we will let

it go, and I shall assure you that you shall not receive two weeks' notice; and in the winter contract I will eliminate it.' I said, 'I should like my winter contract now.'" The defendants objected, and their objection was noted by the judge. — " *Q.* Now, if you will continue. *A.* He said, 'I assure you it will be eliminated from the winter contract, which we are not ready to give out just at present.' I said, 'There must be no misunderstanding in this matter; it is business with me; and I must be perfectly sure of my next season's work, for I have here a letter offering me a hundred dollars for the next season, which I consider in every way a favorable engagement, and I shall accept if there is a possibility of a misunderstanding.' He says, 'There is no misunderstanding; I now engage you for the winter season, for thirty-five weeks, at $100 a week, with no two-weeks' clause.' — *Q.* What did you say to that? *A.* I said, 'Very well,' and declined that offer." The letter containing the offer declined by the plaintiff was then admitted in evidence against the defendants' objection.

*H. G. Allen*, for the defendants.

*T. J. Barry*, (*H. J. Jaquith* with him,) for the plaintiff.

LATHROP, J.   This is an action for breach of an alleged oral agreement to employ the plaintiff, an actress, for the fall and winter season of 1898 and 1899, thirty-five weeks at $100 a week.   There was evidence that the plaintiff, at the request of the manager of the defendants' theatre in Boston, one Emery, went there at his request, on trial for two weeks, in April, 1898, and that an agreement was subsequently entered into between her and Emery, covering both the summer season of 1898, and the fall and winter season following; that she then signed a contract in writing for the summer season, at the salary of $70 a week, and this contract contained the following clause: " This contract can be cancelled or annulled by either party upon giving two weeks' notice in writing."

The plaintiff contended that at the same time it was orally agreed between her and Emery that she should perform at the defendants' theatre, at the salary of $100 a week, for the fall and winter season, unconditionally, without the right to terminate by notice, and that she consented to enter into the contract for the summer season in consideration of the absolute engage-

ment made at the same time for the fall and winter season. The defendants denied that any agreement was made for the fall and winter season, and alleged that the only agreement was for employment for the summer season by the written contract before stated ; but that they subsequently offered to employ the plaintiff, and tendered to her a written contract for the fall and winter season, at a salary of $70 a week, which contained the same provision for termination by notice as the contract for the summer ; and that she declined to sign it.

No question is made of the authority of Emery to bind the defendants ; nor is it disputed that the testimony of the plaintiff warranted the jury in deciding in her favor. The only exceptions relied upon are to the admission of portions of the plaintiff's testimony. It is contended that because a written contract was made for the summer season, no evidence of conversations prior and relating thereto was admissible. But the plaintiff did not seek to vary or control this contract. She was simply relating what took place at a certain interview when the agreement for the fall and winter engagement was made. We do not see that the defendants were in any way harmed by the admission of the evidence.

*Exceptions overruled.*