## LYNN SAFE DEPOSIT AND TRUST COMPANY *vs.* EMERY ANDREWS.

Suffolk.   November 22, 1901. — February 28, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Pleading*, Demurrer, Declaration.  *Guaranty*, Acceptance.  *Evidence*, Extrinsic
affecting writings.

Where a declaration contains but one count and to that a general answer is filed,
and the declaration is then amended by the addition of a second count and the
defendant demurs, the demurrer must be restricted to the second count or to
some impropriety in joining the two counts in the same declaration.

In an action for a breach of a guaranty in writing of a promissory note, it is suffi-
cient for the declaration to set out the agreement of guaranty and to describe
the note without setting out the note at length.

Where a guaranty has been signed and mailed in pursuance of an arrangement, that a certain note will be discounted if its payment is thus guaranteed, no notice that the note has been discounted in reliance on the guaranty need be given to the guarantor in order to make the guaranty binding.

Where in a guaranty in writing a promissory note is described by its date and amount, the rate of interest and the names of the maker and payee and as payable in six months from date, it can be shown by oral evidence that a note fulfilling these conditions and also containing a statement of certain collateral by which it is secured and the usual provisions regarding the sale of collateral in case of default is in fact the note covered by the guaranty. This can be shown by evidence, that the guaranty was given in pursuance of an arrangement with a trust company, to which the guaranty was made, that the note should be secured by the collateral named in it, that the form of note used was that invariably used in such cases by banks and trust companies and that such a note is described in the business community as a six months note or a note payable in six months from date.

CONTRACT on a guaranty in writing of a note of one Edward P. Tuttle for $18,000, Tuttle having made default thereon and the collateral security given by him having become worthless. Writ dated July 11, 1899.

The pleadings, ending in a demurrer to the amended declaration, are described by the court.

In the Superior Court, the trial, before *Sherman, J.,* took the course stated by the court. The material portion of the agreement of guaranty was as follows:

"In consideration of one dollar, and other good and valuable considerations, to me paid by the Lynn Safe Deposit and Trust Company, the receipt whereof is hereby acknowledged, I hereby guarantee to the said company the prompt payment of the following-described note, viz.: A note for eighteen thousand dollars ($18,000), dated Boston, Mass., January 9, 1899, made by Edward P. Tuttle, payable in six months from date, with interest at the rate of five per cent (5%) per annum, to the order of the Lynn Safe Deposit and Trust Co., of Lynn, Mass."

The note, as executed, stated the collateral by which it was secured and contained the usual provisions in regard to sale of the collateral in case of default.

The judge found the facts to be as follows: The plaintiff trust company for the past twelve years has conducted a general banking business in Lynn. About ten days before January 9, 1899, one Edward P. Tuttle, who had intimate business relations with the defendant, called with the defendant at the office of the plain-

tiff, and in the presence and with the concurrence of the defendant made an oral application to the plaintiff through its president for a loan of $18,000 upon the promissory note of Tuttle, to be secured by two hundred shares of the capital stock of the Tuttle-Smith Company and to be guaranteed by the defendant. Nothing further was said about the form of the note, except that it was to be a six months' note. To this application for the loan the president of the plaintiff replied, that he would investigate the financial responsibility of the defendant, and, if he should be satisfied with regard to it, he would report the application to the directors of the plaintiff and they would probably authorize the loan. The president of the plaintiff thereupon investigated the pecuniary responsibility of the defendant, and being satisfied in regard to it, orally consulted with the board of directors of the plaintiff, and upon receiving authority from that board made the loan and caused the written agreement to be drawn by the treasurer of the plaintiff and mailed to the defendant at his residence at Kennebunk in the State of Maine. With it was enclosed a letter from the treasurer of the plaintiff, stating, that if the defendant would date and sign the guaranty the plaintiff would discount for Tuttle the note described in that instrument. The defendant received the agreement and letter, dated and signed the guaranty and mailed it to the plaintiff. The president of the plaintiff thereupon at once informed Tuttle that the defendant's guaranty had been received and that the plaintiff was ready to make the loan. Tuttle, after receiving this information, and at about noon of the same day, called at the office of the plaintiff, executed the note, and upon signing and delivering the note to the plaintiff received therefor from the plaintiff the full sum of $18,000, Tuttle at the same time orally agreeing to send to the plaintiff a certificate for the two hundred shares of the stock of the Tuttle-Smith Company, which the plaintiff was to have as collateral security. The plaintiff received this security from Tuttle within a day or two after the loan was made. The plaintiff lent the $18,000 to Tuttle and accepted his note and collateral security in reliance upon the guaranty of the defendant.

The note was intended by the plaintiff and by Tuttle to be the note described in the written guaranty of the defendant and

was the note described therein, there being no other note of Tuttle at any time taken or suggested to be taken by the plaintiff. The plaintiff did not notify the defendant of the receipt of the guaranty nor did it notify the defendant that the note therein described had been discounted and $18,000 lent thereon to Tuttle, but the defendant knew within two or three days after January 9, 1899, the day on which the loan was made, that the plaintiff had made the loan of $18,000 to Tuttle, and knew within a week that Tuttle had given to the plaintiff his note therefor secured by two hundred shares of the stock of the Tuttle-Smith Company. On or about February 15, 1899, the Tuttle-Smith Company became insolvent and made an assignment for the benefit of its creditors, and its entire capital stock thereupon became and was known to be worthless. Tuttle thereupon became and was known to be financially worthless. Within a few days after the assignment Tuttle informed the president of the plaintiff that he could do nothing toward the payment of the note. A month or so later, about March 14, 1899, the president of the plaintiff made repeated requests of the defendant that he should furnish good collateral security for the note or take it up, but upon the defendant's failing to do either, the plaintiff made no further demand upon the defendant until after July 9, 1899, when the note became due and payable according to its terms, except that the attorney for the plaintiff had an interview with the attorney for the defendant, who was at the time acting as attorney of Tuttle, and was told by that attorney that Tuttle was worthless and could pay nothing on the note and that the defendant denied any responsibility with reference to his guaranty. Thereupon, on July 11, 1899, two days after the note became due, this suit was brought.

The judge found as a fact and as a conclusion of fact from the evidence that the note made by Tuttle and discounted by the plaintiff, and on which the plaintiff lent to Tuttle the sum of $18,000, was the note described in the guaranty of the defendant and was such a note as was contemplated by the parties to the guaranty.

He further found as a fact that the note given by Tuttle and taken by the plaintiff was the usual form of note taken by trust companies and other banking institutions in this Commonwealth

whenever collateral security is taken and that it is the general custom of trust companies and other banking institutions in this Commonwealth, when collateral is taken with a note, to take a note in this form.

He further found as a fact that a note such as was taken by the plaintiff in this case from Tuttle is usually described and. generally known among business men throughout the business and banking community as "a six months' note," "a note payable six months after date," and "a note payable in six months from date," and that these terms are used interchangeably to describe a note like that taken by the plaintiff in this case.

He further found that the expressions "to loan money upon a note" and "to discount a note" are generally used interchangeably and with an identical meaning and were so used by the parties to this suit.

He further found as a fact that no demand was made by the plaintiff upon Tuttle for the payment of the note before July 9, 1899, nor was any demand made by the plaintiff upon Tuttle to furnish any additional or substitute collateral, and the judge found that the requests made by the plaintiff upon the defendant to furnish additional collateral or take up said note were not made with a view to declaring or treating the note as due, but were made partly because of the defendant's oral undertaking that he would furnish collateral and partly because of a general custom among banks and bankers to make such requests of indorsers, guarantors or other persons collaterally liable upon any notes, the promisors in which have become worthless, whether such notes are due and payable or not.

Upon these findings of fact and the inferences of fact to be drawn therefrom, the judge found for the plaintiff in the sum of $20,218.12, interest being figured to June 11, 1901.

The defendant alleged exceptions to various rulings and refusals to rule and to the findings of fact being made a part of the bill of exceptions.

*J. C. Ivy*, for the defendant.

*B. N. Johnson*, for the plaintiff.

HAMMOND, J. 1. As to the demurrer. The original declaration contained one count. To that a general answer was filed. After that the declaration was amended by the addition of a

second count and the defendant then demurred. Such a demurrer must be restricted in its application to the added count or to some impropriety in joining the two counts in the same declaration. There is no such inconsistency between the two counts as to afford grounds for demurrer. The plaintiff may properly state its case in different ways so as to meet each of the various aspects in which the evidence at the trial may possibly leave it. The second count sufficiently describes the note. The action is not upon the note but upon the guaranty, which is set out in full. The count sufficiently sets out the contract of guaranty, the loan in reliance thereon and the breach thereof by the defendant. The demurrer was rightly overruled.

2. The demurrer having been overruled, the trial of the case upon its merits was begun before a jury, but at the close of the evidence the case was taken from the jury by consent of the parties, and upon the evidence was further heard by the judge and disposed of as a jury waived case. The judge made a finding of facts, a statement of which, against the exception of the defendant, was incorporated in the bill of exceptions. The case is before us upon the various exceptions raised at the trial before the jury and at the argument before the judge including the action of the judge upon the rulings requested, and to the finding of facts. Such exceptions as have not been argued upon the defendant's brief we shall consider waived.

As to the findings of facts it is sufficient to say, that after an examination of the evidence, which need not be recited in detail, the findings seem to us to be well warranted; and in the further consideration of the case we shall take the facts as thus found.

One of the questions raised by the defendant is whether the contract of guaranty was ever made. He contends that the sending of the guaranty was an offer from him which was never accepted by the plaintiff, or that at any rate the plaintiff never notified him of its acceptance. But the facts sufficiently show a binding contract between the plaintiff and the defendant. The guaranty was forwarded to the plaintiff plainly in pursuance of a previous understanding and agreement that it should be sent upon a certain condition, namely, the willingness of the plaintiff to make a loan to Tuttle. The defendant, upon receiving the letter of the plaintiff's president which stated that upon the

return of the guaranty duly executed the loan would be made, at once sent the guaranty in performance of the agreement. Within two or three days he knew that in reliance upon the guaranty the loan had been made. Under these circumstances the guaranty became operative, and there was no need of further notice. *Bascom* v. *Smith*, 164 Mass. 61. *Lennox* v. *Murphy*, 171 Mass. 370.

Another objection is that the note given by Tuttle materially differs from that which the defendant agreed to guarantee. This objection may be considered in connection with the exception taken by the defendant to the admission of oral testimony. The defendant contended throughout the trial that the note given by Tuttle was not and could not be the note described in the guaranty, and therefore was not admissible in evidence, and asked the court so to rule. He further contended that the conversation between the plaintiff's president, Tuttle and the defendant, at the time the application for the loan was made, was not competent evidence for any purpose, and that the court should take the guaranty and note and, without the assistance of any oral testimony and without taking into account the circumstances under which it was made, should determine whether the guaranty could be applied to the note. The judge admitted the note, the evidence as to the conversation, and also evidence that where collateral security is given to secure a note taken by trust companies and banks in this State the universal custom and practice is to have the note in the form of the one taken in this case, and that a note like this is called and described in the business community as a six months' note or a note payable in six months from date.

It is perfectly well settled that while oral testimony is not admissible to contradict, enlarge, limit or vary a written instrument, it is nevertheless admissible to show the situation of the parties and the circumstances at the time when the contract was made. *Bassett* v. *Rogers*, 162 Mass. 47, and cases cited. *Drake* v. *Allen*, 179 Mass. 197. It is equally well settled that in explanation of any term of a contract oral evidence is admissible to show that a particular significance had been attached to it by reputation, usage of trade, or otherwise. *Stoops* v. *Smith*, 100 Mass. 63. *Swett* v. *Shumway*, 102 Mass. 365. The

purpose of all such evidence is to ascertain in what sense the parties used the term; and sorry work would be made if he who is to interpret a contract should close his eyes, if indeed such a thing could be completely done, to every other thing except the papers before him.    The evidence was clearly admissible.

It appears from the findings of fact, that before the guaranty was given the defendant knew that the plaintiff was to investigate his financial standing, and if satisfied was to make the loan to Tuttle, and was to have Tuttle's note secured by two hundred shares of the capital stock of the Tuttle-Smith Company as collateral security and guaranteed by the defendant.    The latter also knew that the plaintiff was a trust company, and may be presumed to have known that such a note would be in the form in universal use among institutions like the plaintiff.    In a day or two he is notified by a letter from the plaintiff that if he will fill out, execute and send to it the form of guaranty therein enclosed, it will immediately make the loan.    He does as requested, and the loan is made; and the plaintiff receives from Tuttle a note in the form universally used in such a transaction.    The judge has found as a fact, and as a conclusion of fact from the evidence, that the note was the note described in the guaranty. Such a finding is not inconsistent with the terms of the guaranty.    Such a note is known in business circles as a note "payable in six months from date," and it is payable to the order of the Lynn Safe Deposit and Trust Company of Lynn, Mass., in the manner in which according to the usage such a note is made payable, it is dated at Boston and in all other respects agrees with the guaranty.    We see no error in the manner in which the judge treated any of the rulings requested.    The case seems to us too plain to call for further discussion.

*Demurrer overruled ; exceptions overruled.*