# Hyman J. Rome vs. Alfred C. Gaunt

Suffolk. March 23, 1923. — June 22, 1923.

Present: Rugg, C.J., DeCourcy, Crosby, Pierce, & Carroll, JJ.

*Contract,* Of guaranty, Construction, Consideration, Performance and breach. *Sales Act. Frauds, Statute of. Notice. Waiver.*

A company manufacturing woolens, in a financial condition in which it could not make purchases of wool, on May 13 made with a factor, who knew of that condition, an agreement relating to the sale of its product and also an agreement contained in a letter reading as follows: " . . . we give below the conditions upon which we shall be pleased to guarantee and finance your purchases of wool. We agree to finance your purchases of wool not to exceed $20,000 at any one time, in return for the cash discount of 2% which we understand you can obtain from your wool dealers. . . . " There followed stipulations as to book entries. The company showed this letter to a dealer in wool, who had refused it further credit, and, relying on it, the dealer sold wool to it by sample at prices then agreed upon, the wool being placed in a warehouse in the dealer's name, to be delivered at the company's orders. Four shipments of wool were made to the company and were paid for by checks of the factor sent by him directly to the dealer. The factor then by letter requested the company to have goods billed to him on future shipments and, while consigned to the company, to remain his property until paid for by the company. This letter at once was shown to the dealer and thereafter shipments were made to the company, and invoices were sent to the factor. The sales on the dealer's books were to the company. Two shipments were made to the company in July which brought the total shipments beyond $20,000. Bills were sent to the factor, who wrote to the dealer, after a request for payment, that he was writing to the company, asking if they had " received the goods and asking them to authorize us to pay the bills; " and also wrote to the company stating, among other things, that payment of the bills would cause them to pass the limit of $20,000 and requesting that no more wool be bought until the account was reduced. The factor afterwards refused to pay for the July shipments. In an action by the dealer against the factor for the agreed price, it was *held,* that

(1) Findings were warranted that the relationship between the company and the defendant in purchasing the wool in question was not that of principal and agent, and that there was not a novation by which the defendant was substituted for the company as a debtor of the plaintiff;

(2) A finding was warranted that a direct liability upon the company and a contingent liability upon the factor were created;

(3) Provisions of the sales act were complied with;

(4) Findings were warranted that the letter of May 13 was written by the defendant for the purpose of furnishing the company with needed credit, that he knew that the letter would be of little value unless the company was authorized to exhibit it to dealers, that the defendant knew it was exhibited to dealers and that wool was sold to the company on the faith of it, and that in this respect he ratified and confirmed the acts of the company;

(5) Findings were warranted that all shipments were made, and that the defendant knew that they were made, in reliance upon his guaranty contained in the letter of May 13;

(6) A ruling by the trial judge, construing the letter of May 13 " as a promise to any wool dealer, who should give credit to the company upon the faith of the promise therein contained, to pay for such wool as he might sell the company, subject to the condition . . . that the company's total indebtedness for purchases of wool on the defendant's credit, from whatever sources, should not exceed $20,000 at any one time," was correct;

(7) Although the plaintiff was not expressly referred to by name in the instrument as the promisee, he was included by description as a party to it;

(8) The statute of frauds was not a defence;

(9) Although no consideration moved directly from the defendant to the plaintiff, nevertheless the furnishing of credit to the company by the plaintiff on the strength of the defendant's promise was a sufficient consideration to support the guaranty;

(10) Findings were warranted, not only that the defendant had notice of the acceptance by the plaintiff of the defendant's guaranty to pay for the shipments in question, but also that the defendant knew that the plaintiff made the shipments relying on the guaranty, which knowledge was equivalent to notice; and a defence, that no notice of any acceptance by the plaintiff of the guaranty was given to the defendant, could not prevail;

(11) A finding that the defendant had waived his right to insist that, because of the excess beyond $20,000, he was not liable for the July shipments, was warranted;

(12) A finding for the plaintiff was warranted.

If there be any doubt as to the proper meaning of the language of an instrument, the construction which the parties have adopted and acted upon will be considered of weight by the court and usually will be adopted.

CONTRACT for $5,802.60, the price of wool and containing bags shipped by the plaintiff to East Wilton Woolen Mills. Writ dated January 3, 1921.

The declaration was in two counts. On the second count there was a finding for the defendant. The first count was upon an account annexed containing two items for wool dated July 29, 1920, and one item dated July 30, two items for bags on the corresponding dates and an item of a " total " claim of $5,802.60.

The action was heard by *McLaughlin*, J., without a jury. Material evidence and findings are described in the opinion.

Requests by the defendant for rulings and rulings made by the judge thereon were as follows:

" 1. Upon all the evidence, the plaintiff cannot recover." " Refused."

" 2. The relation between the defendant and the East Wilton Woolen Mills is that of factor and principal, in which the defendant was factor and the East Wilton Woolen Mills was principal." " Refused, if it is to be construed as meaning that the sole relation ·between the defendant and the East Wilton Woolen Mills was that of factor and principal. It is true that that was one of the relations which existed between them."

" 3. The East Wilton Woolen Mills was not the agent of the defendant." " I have found as a fact that the East Wilton Woolen Mills was not an agent of the defendant."

" 4. The contract between the plaintiff and the East Wilton Woolen Mills did not authorize the East Wilton Woolen Mills to pledge the credit of the defendant in the purchase of merchandise." " Given. If, however, the word ' plaintiff ' was used inadvertently instead of ' defendant,' then the request is refused."

" 5. In order to recover from the defendant, the plaintiff must by a fair preponderance of the evidence establish: (a) That the defendant bought or agreed to buy the merchandise described in the plaintiff's declaration, or in the alternative — (b) That the defendant signed or authorized his agent to sign a note or memorandum of sale or agreement." " Refused."

" 6. There is no evidence that the defendant accepted any part of the merchandise bought." " Given, if the request means that there is no evidence that the defendant accepted any part of the merchandise as a purchaser from the plaintiff."

" 7. There is no evidence that the defendant signed any note or memorandum of the sale or agreement of sale." " Given."

" 8. There is no evidence that the defendant authorized an agent in his behalf to sign any note or memorandum of the agreement or sale." " Given."

" 9. Under the provisions of G. L. c. 106, § 61, the plaintiff cannot recover." " I do not see the applicability of the section cited, and therefore refuse the request."

" 10. One dealing with a special agent is bound at his peril to ascertain the extent of his authority." " Given."

" 11. The plaintiff cannot recover from the defendant by virtue of any agreement between the defendant and the East Wilton Woolen Mills, even though the agreement obligated the defendant to pay as directed by the East Wilton Woolen Mills." " Given, with this qualification: unless such agreement constituted a guaranty, which the defendant intended and expected should be acted upon by the plaintiff."

" 12. An agreement between two parties, even upon sufficient consideration, whereby one agrees to pay sums of money to a third person who is not a party to the agreement and from whom no consideration moves, does not give a right of action in favor of such third party to recover from the party contracting to pay." " Given."

" 13. The plaintiff has not satisfied the statute of frauds, and therefore cannot maintain this action against the defendant." " Refused."

" 14. The property in the merchandise described in the plaintiff's declaration, count 1, has not passed to the defendant." " Title to the merchandise described in count 1 of the plaintiff's declaration passed to the defendant solely for the purpose of securing payment to him by the East Wilton Woolen Mills."

" 15. The property in the merchandise described in the plaintiff's declaration, count 2, has not passed to the defendant." " Given."

" 16. The plaintiff cannot maintain an action against the defendant for the price of the merchandise described in the declaration in count 1." " Refused."

" 18. In order to recover the purchase price of merchandise described in the plaintiff's declaration, the plaintiff must establish: (a) that the title in said property has passed to the defendant; or (b) that the defendant agreed to pay the price on a day certain irrespective of delivery or transfer of

title; or (c) that the property in the case has not passed and they cannot readily be resold at a reasonable price, and that the plaintiff offered to deliver the goods to the defendant, and the defendant refused to receive them, and the plaintiff notified the defendant that the goods were held by the plaintiff as bail for the defendant." " Refused."

" 19. An agent in whom is reposed trust or confidence may not entrust the performance of his duty to another without the consent of his principal." " Given."

" 20. Even though the defendant made the East Wilton Woolen Mills its agents for the purchase of merchandise for its account, then the East Wilton Woolen Mills had no right to entrust the performance of the agency to sub-agents or others unless expressly authorized by the defendant." " This has become immaterial under my finding."

" 21. Even though the defendant made the East Wilton Woolen Mills its agent for the purchase of merchandise for its account, and though from the nature of the plaintiff a sub-agent must necessarily be employed, nevertheless such employment of a sub-agent must be made by a formal and legal act of the corporation." " This has become immaterial under my finding."

" 22. There is no evidence of any formal or legal act of the East Wilton Woolen Mills in execution of such an agency." " This has become immaterial under my finding."

" 23. The defendant was not required to reply to the letter of September 23, 1920, from the defendant to him, or to make any reply to other letters or the rendering of bills, and his failure to answer is no evidence of the truth of the facts therein stated." " Given."

" 24. In order to hold the defendant for the purchase price of merchandise delivered to the East Wilton Woolen Mills, the plaintiff must prove that he gave notice to the defendant that he accepted the defendant's guaranty and was acting on it." " Given with the qualification: except so far as said notice was waived."

" 25. When one signs a writing declaring that he will become responsible for whatever another may purchase, the writer is entitled to notice of the acceptance of the offer." " Given."

" 26. The undertaking of guaranty is principally an offer, and does not become a binding obligation until it is accepted and notice of the acceptance given to the guarantor." " Given."

27. " In cases of this kind the language of the instrument is not to be construed most strongly against the party who uses it. We are to find the meaning of the parties if possible from the language, and in doubtful cases, inasmuch as the promise is to pay the debt of another, the presumption is that a guaranty of a single transaction or of limited transactions was intended, rather than a continuing guaranty." " Given."

" 28. The intent and meaning of the agreement of May 13 was that the East Wilton Woolen Company should not at one time be owing the defendant in excess of $20,000 for advances made to it or for its account or obligations contracted on its account." " Given with the qualification: provided that such advances were obligations arising out of the purchase of wool under the defendant's guaranty."

" 29. If at the time of the sale of the merchandise in issue the East Wilton Woolen Company was indebted to the defendant in a sum of $20,000, the defendant was under no obligation to make any other or further advances or under no other or further obligations under the contract of May 13." " Given."

" 30. This is no evidence of any ratification by the defendant of the purchases made by the East Wilton Woolen Mills from the plaintiff on July 29 and July 30, 1920." See ruling on number 31.

" 31. The letter from the defendant to the plaintiff of August 14, 1920, is not a ratification of the purchases made by the East Wilton Woolen Mills from the plaintiff on July 29 and July 30, 1920." " 30 and 31, If the word ' ratification ' is used in these requests in the sense of ratification by a principal of his agent's acts, the requests are immaterial because of my finding that no agency existed. There was, however, evidence, including the letter of August 14, 1920, tending to show that the defendant did ratify and confirm the exhibition of the letter to the plaintiff by the president of the East Wilton Woolen Mills, and did approve

and acquiesce in the reliance on the part of the plaintiff upon the promise of the defendant contained in said letter to guarantee and finance the purchase of wool to the extent and within the limits therein specified."

The judge found for the plaintiff on the first count in the sum of $6,253.78; and the defendant alleged exceptions.

*Lee M. Friedman,* (*P. D. Turner* with him,) for the defendant.

*M. E. Bernkopf,* for the plaintiff.

CROSBY, J. This is an action of contract to recover, under the first count of the declaration, the sum of $5,802.60 for two shipments of wool, one on July 29, 1920, and the other on the following day. Under the second count the plaintiff seeks to recover $4,785 for wool shipped on November 15, 1920. The record recites that no question arose at the trial as to quality, quantity or prices. All the evidence and findings material to the bill of exceptions are set forth in extracts from the findings and rulings of the judge and are embodied in the record. The evidence consists largely of letters written by the parties and by the East Wilton Woolen Mills, a corporation hereinafter referred to as the company. The plaintiff is a dealer in wool, having places of business in Boston and Worcester. The defendant's business is that of a selling agent or factor representing several mills and having a place of business in New York City.

The judge made the following findings: During the first part of 1920 the plaintiff had sold large quantities of wool to the East Wilton Woolen Mills, located at East Wilton, Maine, for which in May of that year, the company was indebted in the sum of about $8,200. The company thereafter requested further shipments but owing to the indebtedness the plaintiff refused to make them. On May 13, 1920, shortly after such refusal, the company entered into a contract with the defendant for the sale of its product through his agency, the terms of which were set forth in a letter, bearing that date, from the defendant to the company; and were accepted by the latter. On the same day the defendant sent another letter to the company which was accepted by it; this letter is as follows:

"May 13, 1920.

East Wilton Woolen Mills,
East Wilton, Maine.
              Attention Mr. W. W. Capers, President.
Gentlemen:

Supplementing our letter to you of May 13th, we give below the conditions upon which we shall be pleased to guarantee and finance your purchases of wool.

We agree to finance your purchases of wool not to exceed $20,000 at any one time, in return for the cash discount of 2% which we understand you can obtain from your wool dealers.

In liquidating your indebtedness to us occasioned by this financing of wool purchases, we understand that we are to credit your account on our books with 50% of the 90% of accounts receivable which we would normally pay to you each week, as detailed in our letter of May 13th.

                    Yours very truly,
                              Alfred C. Gaunt & Company.
Accepted:                          By H. L. Rutherford.
East Wilton Woolen Mills,
W. W. Capers, Pres."

On May 14, 1920, the president of the company, one Capers, showed this letter to the plaintiff who, relying on its terms, entered into a contract with the company for the sale of a large quantity of wool; after examining samples, Capers selected a certain number of bags which included the wool described in the second count, and the other shipments for which the plaintiff received payment. The prices were agreed upon and the wool not shipped was placed in a warehouse in the plaintiff's name, to be delivered at such times as the company might direct. The agreed price for the entire lot was about $24,000.

On May 21, 1920, the defendant sent the company a letter asking it to write him to the effect that wool for which he paid would be his property until any balance due thereon was liquidated under their agreement. On May 24 the company replied, assenting to the request contained in the defendant's letter of May 21. On May 26 the defendant wrote the plaintiff that on the previous day he had forwarded a check to him in payment for the latter's bill for

wool shipped to the company. This letter stated that he had received a request from the company for a duplicate invoice, and asked the plaintiff to render all future bills in duplicate to the company.

It appears that between May 13, 1920, the date of the first letter above referred to, and June 18, 1920, that is, on May 15, 27, 28, and also on July 10, the plaintiff shipped several lots of wool to the company and received in payment the defendant's check, which was sent direct to the plaintiff from New York. The rest of the wool was kept in a warehouse subject to the orders of the company. On June 18 the defendant wrote the company requesting that on future purchases made by the latter the goods be billed to the defendant and then consigned to the company, the same to remain the property of the defendant until paid for. The presiding judge found that this letter was shown to the plaintiff soon after it was written; and on July 10, 1920, the plaintiff shipped a lot of wool to the company and, in compliance with the defendant's letter of May 26, sent an invoice of the shipment to the defendant; on July 21, the latter wrote the plaintiff acknowledging receipt of the invoice and enclosed his check for the amount thereof.

On July 29, the plaintiff shipped to the company the wool described in items 1, 2 and 3 of the account annexed to the declaration marked " A," and on July 30 the wool described in items 4 and 5 of the same account annexed; all of which was delivered at the mill. The plaintiff billed the goods to the defendant and forwarded to him at New York invoices for the shipments made on each date; and sent duplicates of these invoices to the company. The invoices are printed in the record. On July 30, the defendant wrote the company: " We are enclosing herewith bill from H. J. Rome & Co. dated July 29th for $4114. Kindly O. K. this bill for payment." On August 13, the plaintiff sent the defendant the following letter:

" We shall be glad to receive a check for bill of

July 29 for   $4114.00

July 30       1668.60

———————

$5782.60

" These goods were billed as 2/10 dys. Hoping to receive a check from you, . . . ."

In reply, the defendant on August 14 wrote: " We are in receipt of your letter of Aug. 13th regarding your two bills amounting to $5782.60.    These bills have not yet been checked up by the East Wilton Woolen Mills.    We are writing them today if they have received the goods and asking them to authorize us to pay the bills."    On the same day he wrote to the company that he had received a request from the plaintiff for payment of their bills of July 29 and 30; that payment of them would cause him to pass the limit of $20,000 allowed in the wool account; and he requested that no more wool be bought until the account was reduced. The letter also stated: " When you have O. K'd these bills for payment please forward them to the writer and we will take up the question of payment with Mr. Gaunt."

In response to a request for payment of the bills made by the plaintiff by letter dated August 24, the defendant by letter of the same date denied liability.

It appears from the report that on November 9, 1920, the company made an assignment of all its property for the benefit of creditors, which was assented to by both defendant and plaintiff; the assent by the plaintiff expressly stated that the indebtedness arising out of the transactions involved in this action was excluded from such assent, as the plaintiff claimed to hold the defendant therefor.

It further appears from the findings of the judge that on November 15 the plaintiff moved to the mills seventy-seven bags of wool taken from the warehouse where they had been stored with those previously shipped; they were invoiced to the defendant, who refused to accept them.    This wool is the same charged to the defendant in count 2, account annexed " B " of the plaintiff's declaration.

Upon this record and the reasonable inferences to be drawn therefrom the judge was warranted in finding that the relationship between the company and the defendant in purchasing the wool in question was not that of principal and agent.    He was also warranted in finding that there was not a novation by which the defendant was substituted

for the company as a debtor of the plaintiff. The judge found that the plaintiff charged the company on its books for all the goods which he shipped, except those sent on November 15, and treated the company throughout as his debtor; and at no time intended to release it from liability. The judge was warranted in finding that the direction of the defendant in his letter of June 18 to the company, that the goods should be billed to him though consigned to the company, to be his property until paid for and afterwards deposited in the warehouse in his name, was merely for the purpose of obtaining security for such advances as he might make, and was collateral to the agreement between the plaintiff and the company.

The finding that on May 14 the plaintiff, relying on the defendant's supplementary letter of May 13, sold to the company the lot of wool which the president of the company selected, and that the title thereto was then transferred to the company and created a direct liability therefor on the part of the latter and a conditional liability on the part of the defendant, was warranted by the evidence.

It is manifest that the provisions of the sales act relating to the sale of goods of the value of $500 were complied with, as deliveries of substantial portions of the entire lot had been made to the company and manufactured into cloth, and some of them had been paid for.

The findings that when the defendant wrote the supplementary letter of May 13 he was familiar with the financial condition of the company, that it was for the interest of each that the company should not be hampered in the purchase of wool by lack of credit, that the letter was written by the defendant for the purpose of furnishing such credit, that he knew the letter would be of little value unless the company was authorized to exhibit it to dealers, that the defendant knew it was exhibited to dealers and that wool was sold to the company on the faith of it, and that in this respect he ratified and confirmed the acts of the company, were well warranted by the evidence. The judge was justified in finding that the shipments of July 29 and July 30, as well as the previous shipments of May 15, 27, 28 and July

10, were made by the plaintiff in reliance upon this letter, and that the defendant knew that all the goods sold in May and July were so sold and delivered on the strength of the defendant's guaranty.

The ruling of the judge that he construed the letter of May 13 " as a promise to any wool dealer, who should give credit to the company upon the faith of the promise therein contained, to pay for such wool as he might sell the company, subject to the condition . . . that the company's total indebtedness for purchases of wool on the defendant's credit, from whatever sources, should not exceed $20,000 at any one time," was in our opinion in accordance with its legal purport and effect; to hold otherwise would render it of little value to the company in purchasing wool, and such construction of its terms must have been contemplated by the defendant. That it was so construed by him seems apparent in view of his letter of August 14 in which he called attention to the fact that the balance against the company amounted to $20,000 and requested that it make no further purchases until the account was reduced.

We cannot say that the findings to the effect that the guaranty contained in the defendant's letter of May 13 was relied on by the plaintiff in making the contract of sale to the company on the following day, and the sales subsequently made, were without evidence to support them. The findings of the judge that all the wool delivered in May and July was forwarded on the strength of the guaranty, that the defendant knew the letter was exhibited to dealers and that in this respect he confirmed and ratified the acts of the company, were justified by the evidence.

It is apparent from the evidence that the financial condition of the company was such when this letter was written that it needed credit and that the defendant intended to furnish it subject to the limitation stated. If there be any doubt as to the proper meaning of the language of the instrument, the construction which the parties have adopted and acted upon will be considered of weight by the court and will usually be adopted by it. *Gallagher* v. *Murphy*, 221 Mass. 363, 365. *Crowe* v. *Bixby*, 237 Mass. 249, 253. *Beals* v.

*Brookline,* 245 Mass. 20. Unless the defendant intended that the letter was to be exhibited by the company to wool dealers, it is difficult to see how it could be of assistance to the company in making purchases. We have no doubt the defendant intended that it should be so used. *Callender, McAuslan & Troup Co.* v. *Flint,* 187 Mass. 104.

Although the. plaintiff was not expressly referred to by name in the instrument as the promisee, he was included by description as a party to it; the letter was properly construed by the judge as " a promise to any wool dealer, who should give credit to the company upon the faith of the promise therein contained, to pay for such wool as he might sell the company," under a certain condition.

For the same reason the instrument is not subject to the defence of the statute of frauds. It was said by Morton, C.J., in *Jones* v. *Dow,* 142 Mass. 130, at page 140: " The defendant contends that the guaranty is insufficient to satisfy the statute of frauds, because it does not contain the name of the plaintiff as the promisee. It is true that, in order to satisfy the statute of frauds, it is necessary that the memorandum should show who are the parties to the contract, but it is sufficient if this appears by description instead of by name; and if the promisor or promisee is described, instead of named, parol evidence is admissible to apply the description, and identify the person who is meant by it."

The contention that the agreement of May 13 is without consideration and therefore invalid cannot be sustained. While it is true that no consideration moved directly to the guarantor from the plaintiff, yet the furnishing of credit to the company by the plaintiff on the strength of the defendant's promise is a sufficient consideration to support the guaranty. *Atlas Shoe Co.* v. *Bloom,* 209 Mass. 563, 568.

The defence that no notice of any acceptance by the plaintiff of the guaranty was given to the defendant cannot prevail. As to the shipments made in May and on July 10, the judge found they were made on the faith of the letter of May 13 and were paid for with the defendant's checks. The bills for the shipments of July 29 and July 30 were

received by the defendant and forwarded by him to the company for approval. In view of the payments by him of the previous shipments, and all the facts and the reasonable inferences to be drawn therefrom, it could have been found that the defendant had notice of the acceptance by the plaintiff of the defendant's guaranty to pay for the shipments in question; besides it could have been found that the defendant knew that the plaintiff made the shipments relying on the guaranty; such knowledge is equivalent to notice. *Bascom* v. *Smith,* 164 Mass. 61. *Lynn Safe Deposit & Trust Co.* v. *Andrews,* 180 Mass. 527, 533.

The circumstance that when the shipment of July 30 was made, which amounted to $1,688.60, the defendant's account showed that including this shipment the balance against the company exceeded the limit of the guaranty of $20,000 by $290 does not absolve the defendant from liability, as it is found by the judge that " in view . . . of the defendant's letter to the plaintiff of August 14, 1920, and to the company on the same date, and of all the evidence and circumstances in the case, . . . the defendant, so far as the plaintiff was concerned, waived his right to insist that because of this excess he was not liable for the deliveries of July 29 and 30. Some of this wool was warehoused in the defendant's name at his own request." We are of opinion that the finding was not unwarranted. Without reciting in detail all the evidence upon this question, it is plain that it could not be ruled as matter of law that the finding was without evidence to support it.

Many of the requests for rulings made by the defendant which were refused have been covered by what has been said. They all have been considered. It would serve no useful purpose to deal with them separately. We are of opinion that none of them properly could have been made, in view of the findings.

All the material evidence is set forth in the record. Upon this evidence we cannot say that the subsidiary findings were unwarranted as matter of law. Upon these findings, the general finding that the plaintiff is entitled to recover the amount claimed under his first count was justified.

The finding upon the second count was for the defendant; and as the plaintiff waives all right to recover on that count, it is not before us.

*Exceptions overruled.*