## WALTER STOOPS *vs.* ORESTES A. SMITH.

In an action on a written agreement to pay the plaintiff " fifty dollars for inserting business card on two hundred copies of his advertising chart, to be paid when the chart is published," parol evidence is admissible, for the interpretation of the contract and its application to the subject matter, that at the time of the making of the agreement the plaintiff represented and promised that his advertising chart should be composed of a certain material and be published in a certain manner.

CONTRACT against a trader in sewing machines in Worcester on the following agreement signed by him : " Worcester, August 30, 1866. I promise to pay Walter Stoops the sum of fifty dollars for inserting business card in two hundred copies of his advertising chart; to be paid when the chart is published and the card appears to the exclusion of all others in the sewing machine trade." The declaration alleged the full performance of the condition by the plaintiff, and the defendant's refusal nevertheless to pay the stipulated sum on demand. The answer alleged that any sum which the defendant agreed to pay to the plaintiff was in consideration of the plaintiff's promise that the copies of the chart should be made of cloth, and be published by posting in the most public and conspicuous places within forty miles of Worcester ; that there had been a failure of such consideration ; and that the plaintiff made the promise with intent to defraud.

At the trial in the superior court, before *Rockwell*, J., the plaintiff testified " that he resided in Brooklyn, New York ; that he made the contract with the defendant, declared on ; that he printed two hundred charts containing the business card of the defendant to the exclusion of all others in his branch of trade; that within a month after the date of the contract he sent said charts to Worcester by express, and at the same time came to Worcester himself, hung up at the hotel where he stopped in Worcester one of said charts, and distributed the balance among those whose business cards were printed on said chart; that he delivered from four to eight of them at the defendant's place of business ; that said chart was intended to be hung up in public

places as an advertising medium; and that he subsequently requested payment of the defendant, who refused to pay the same." On this evidence the plaintiff rested his case. The defendant asked the judge to rule that, as the contract specified two hundred charts, the plaintiff could not maintain his action without showing that he had published that number of charts in some manner adapted to bring the advertisements thereon to the notice of the public in the vicinity of the defendant's place of business; and that distributing them as testified was not such a publication; but the judge refused so to rule, and ruled that upon the plaintiff's evidence, if believed, he was entitled to recover.

The defendant then " offered to show, by cross-examination of the plaintiff and otherwise, for all purposes for which the evidence might be competent, that, at the time this contract was made, the plaintiff, in order to induce the defendant to enter into it, represented that the defendant's business card would appear on two hundred charts; that the charts were to be made of cloth; that he should publish the same by posting or hanging them up in two hundred of the most conspicuous public places, such as hotels, railroad stations, and the like, within forty miles of Worcester; that the defendant made the contract, relying on these representations; that the plaintiff did not make said charts of cloth, but of paper; that he did not publish the same by posting them in any public place; and that at the time he made the contract he intended not to so publish or make the chart, that the chart has never been published in the way and manner agreed upon as aforesaid; that without publication in some such manner as the one indicated the chart would be entirely valueless for the purposes for which it was intended; that by reason of the failure of the plaintiff to publish the chart according to his agreement and representations the defendant has derived no benefit whatever therefrom; that the getting up and publishing of the chart was not a joint enterprise on the part of the persons whose business cards appeared thereon, but was the individual enterprise of the plaintiff; and that none of the persons to whom said charts were distributed accepted them, or

made any exhibition or publication of them whatever." The judge, on the plaintiff's objection, refused to allow the defendant to introduce the evidence thus offered, and ruled "that as matter of law the terms of the contract were fully complied with on the part of the plaintiff by his printing the card of the defendant upon two hundred copies of his advertising chart to the exclusion of all others in his branch of business, and distributing the two hundred copies as stated by him, and that no evidence of extrinsic facts was admissible, either for the purpose of showing the inducement or the fraud set up in the answer, or the facts and circumstances surrounding the transaction, or for any other purpose." The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*G. F. Verry*, for the defendant.

*F. H Dewey & F. P. Goulding*, for the plaintiff.

WELLS, J. The writing, upon which this action is brought, contains a promise on the part of the defendant only. It recites, imperfectly and in general terms, the agreement to be performed on the part of the plaintiff, as the consideration upon which the promise of the defendant is made. At the trial, the defendant offered evidence to show the whole arrangement between the parties ; particularly the representations of the plaintiff as to the material of which the chart was to be made, and the manner in which it would be published; and contended that he was not bound to pay, because the plaintiff had failed so to make and publish the chart. The court excluded the evidence, and ruled that no evidence of extrinsic facts was admissible for any purpose.

The alleged representations related to that which was then in the future, and were, in one aspect, of a promissory nature. The principle of law is clear and well settled, that the obligation of a written contract cannot be abridged or modified by or made conditional upon another preceding or contemporaneous parol agreement, not referred to in the writing itself. *Trustees of Church in Hanson* v. *Stetson*, 5 Pick. 506. *Wakefield* v. *Stedman*, 12 Pick. 562. *St. Louis Insurance Co.* v. *Homer*, 9 Met. 39. *Adams* v. *Wilson*, 12 Met. 138. *Underwood* v. *Simonds*, Ib.

275.   *Hanchet* v. *Birge*, Ib. 545.   *Prescott Bank* v. *Caverly*, 7 Gray, 217.   *Small* v. *Quincy*, 4 Greenl. 497.   But it is equally well settled that, for the purpose of applying the terms of the written contract to the subject matter, and removing or explaining any uncertainty or ambiguity which arises from such application, parol testimony is admissible, and has a legitimate office. For this purpose, all the facts and circumstances of the transaction out of which the contract arose, including the situation and relations of the parties, may be shown.   *Gerrish* v. *Towne*, 3 Gray, 82.   *Herring* v. *Boston Iron Co.* 1 Gray, 134.   *Sutton* v. *Bowker*, 5 Gray, 416.   *Bradley* v. *Washington, Alexandria & Georgetown Steam Packet Co.* 13 Pet. 89.   *Price* v. *Mouat*, 11 C. B. (N. S.) 508.   The subject matter of the contract may be identified by proof of what was before the parties, by sample or otherwise, at the time of the negotiation.   *Bradford* v. *Manly*, 13 Mass. 139.   *Hogins* v. *Plympton*, 11 Pick. 97.   *Clark* v. *Houghton*, 12 Gray, 38.   *Haven* v. *Brown*, 7 Greenl. 421.   The terms of the negotiation itself, and statements therein made, may be resorted to for this purpose.   *Foster* v. *Woods*, 16 Mass. 116.   *Sargent* v. *Adams*, 3 Gray, 72.   *Mumford* v. *Gething*, 7 C. B. (N. S.) 305.   *Chadwick* v. *Burnley*, 12 Weekly Rep. (Q. B.) 1077.   The meaning of ambiguous terms in the contract may be fixed by showing that a particular significance had become attached to those terms by reputation, usage of trade, or otherwise.   *Woods* v. *Sawin*, 4 Gray, 322.   *Hart* v. *Hammett*, 18 Verm. 127.   *Putnam* v. *Bond, ante*, 58.   The purpose of all such evidence is, to ascertain in what sense the parties themselves used the ambiguous terms in the writing which sets forth their contract.   If the previous negotiations make it manifest in what sense they understood and used those terms, they furnish the best definition to be applied in the interpretation of the contract itself.   The effect must be limited to definition of the terms used, and identification of the subject matter.   If so limited, it makes no difference that the language of the negotiations relates to the future, and consists in positive engagements on the part of the other party to the contract.   Their effect depends, not upon their promissory obligation, but upon the aid

they afford in the interpretation of the contract in suit. They are not the less effective for the purposes of explanation and definition because they purport to carry the force of obligation.

The contract in suit may illustrate this principle in a point that is not in dispute. The defendant agrees to pay fifty dollars "for inserting business card," &c. In applying this stipulation, if the defendant had a business card distinctively known and recognized as such, there would be no difficulty in giving effect to the contract. But the identification of that card would involve the whole principle of admitting parol testimony for the interpretation and application of written contracts to the subject matter. It could be done only by the aid of parol testimony. Suppose he had several business cards, differing in form and contents, but one was selected and agreed upon for the purpose at the time the contract was signed; or that one had been prepared specially for the purpose. Clearly parol testimony would be competent to identify the card so selected or prepared; and to prove that the parties assented to and adopted it as the card to which the contract would apply. Suppose, thirdly, that no such card had been selected or prepared, but its form, contents and style had been described verbally and assented to, and the plaintiff had agreed to insert it as so described. Such evidence may be resorted to, not for the promise it contains, but for the aid it affords in fixing the meaning and applying the general language of the written contract.

The same considerations render the evidence offered by the defendant competent for similar purposes. The term " his advertising chart " requires to be practically applied. The representations of the plaintiff are in the nature of a description of the vehicle by which the publication of the business card was to be effected; and his account of the disposition he proposed to make of the charts was a description of the extent and the sense in which it was to be an " advertising chart." The representations as to the material of which the chart was to be made, and the mode of publication, constitute his description of what " his advertising chart " was. *Macdonald* v. *Longbottom*, 1 El. & El. 977.

When applied to such an article as this, the word "published" can have no fixed signification which the court can apply to the contract. What was a sufficient publication within the sense and intent of the contract must be ascertained and determined by the jury, in the light of all the facts of the case. We think the jury may consider the plaintiff's own description of the chart, and his representations as to the mode of publishing it, upon this question. *Atwood* v. *Cobb*, 16 Pick. 227. *Ellis* v. *Thompson*, 3 M. & W. 445.

It follows, that the evidence offered by the defendant was improperly excluded. It was competent for the purposes hereinbefore indicated. It is unnecessary to consider the questions which have been discussed with so great thoroughness and ingenuity of argument by the plaintiff's counsel, upon the defence of fraud and misrepresentation ; because in the view of the case which we have taken the whole force of the defendant's testimony will bear upon the interpretation of the contract itself.

*Exceptions sustained.*