BENJAMIN F. SMITH & another *vs.* VOSE AND SONS PIANO COMPANY.

Suffolk.    November 23, 1906. — February 27, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Evidence,* Extrinsic affecting writings.    *Words,* "Water."

In an action to recover the contract price for drilling an artesian well under a contract in writing to procure "twenty-five gallons of water per minute," the defendant may show by oral evidence that the word "water" meant fresh water suitable for drinking and for other purposes for which salt water could not be used.

In an action on an agreement in writing to recover the contract price for drilling an artesian well for a corporation engaged in the manufacture of pianos, it appeared that by the contract the plaintiff undertook "to procure water in the earth above the bed rock" on the defendant's premises by driving in the boiler room of the factory a pipe two and one half inches in diameter, but if a sufficient amount was not obtained then to "drill a well not less than six inches in diameter in the bed rock . . . until twenty-five gallons of water per minute is obtained." The plaintiff drilled a well which finally produced this volume of water but the water was very salt and unsuitable for use in the defendant's business. The plaintiff contended' that he had performed his contract. The defendant offered to show by oral evidence that during the preliminary negotiations which resulted in the contract the plaintiff was informed by the defendant that its object in driving the well was to obtain a supply of water to be drunk by its workmen and to be used for other purposes in the defendant's factory for which salt water could not be used, that the defendant also informed the plaintiff that it could not use salt water for anything, and that if salt water was wanted it could be obtained within a few feet of the surface by an ordinary duplex pump, that the plaintiff agreed to furnish water as good as the water produced by a well dug by the plaintiff for a certain brewing company which

the defendant had tested and knew to be good. The evidence was excluded by the judge against the exception of the defendant, and a verdict was returned for the plaintiff. *Held,* that the exclusion of the evidence was wrong, and that the defendant was entitled to a new trial, the evidence being admissible to show the meaning of the word "water" as used in the contract in writing.

CONTRACT upon an agreement in writing to recover the contract price for drilling an artesian well upon certain premises belonging to the defendant, a corporation organized under the laws of the State of Maine, and engaged in the manufacture of pianos in Boston. Writ dated October 7, 1903.

In the Superior Court the case was tried before *Schofield,* J. It appeared that the contract was drawn wholly by the plaintiffs, and consisted of a proposition, contained in a letter written by the plaintiffs to the defendant dated February 24, 1903, which was accepted by the defendant. The letter and the acceptance were as follows :

" Vose & Sons Piano Co.,
      " 158 Boylston St., Boston.
" Gentlemen :

" We herein submit a proposition to drive at your new factory, Massachusetts Ave., Boston, in your boiler room at a place designated by your superintendent, Mr. Vose, a 2 1-2 inch extra strong lap welded pipe, using extra strong couplings, and do the best we can to procure water in the earth above the bed rock for the sum of one dollar ($1.00) per foot. If a sufficient amount of water is not obtained, and we drive a pipe by our steam drilling machine to bed rock, and drill a well not less than six inches in diameter in the bed rock, no charge will be made for the 2 1-2 inch pipe driven, but we are to have the privilege of pulling up the pipe.

" In case a well is drilled by steam power, it will be done in the following manner : — we agree to drive a lap welded pipe not over twelve inches or less than eight inches to the bed rock, then drill in the bed rock a hole not over ten or less than eight inches in diameter, in the bed rock to a depth of ten feet, tapering the hole in the rock to the outside diameter of the six or eight inch pipe.

" If the water and earth formation above is not shut off by the larger pipe driven to the rock, we will drive either six or an eight inch pipe firmly into the tapered hole prepared for it, and after the well is finished, we will furnish Portland cement and cement

between the inside pipe and the bed rock to keep out the surface water and the sand.   Then we will continue to drill a hole not less than six inches in diameter in the bed rock until twenty-five (25) gallons of water per minute is obtained, for the sum of three dollars and seventy-five cents ($3.75) per foot, provided the aforesaid amount of water is obtained within three hundred feet.   For over three hundred feet, the price will be four dollars and twenty-five cents ($4.25) per foot.

" This is with the understanding that· this proposition is accepted within six days from date, as the prices given are much below our regular price for doing such work, and are given to keep our men at work for a short time, this being our dull season.

" Your Company is to furnish us with steam for our engine and a small amount of coal for forge for sharpening our drills.

" We will make two pump tests of ten hours each, during which time twenty-five (25) gallons of water per minute must be pumped continuously.

" We will furnish all the necessary pipe, fittings, valves, and pipe for steam from your boiler to our engine, and cover the pipes outside the building to keep the steam from condensing.

" Should any accident occur, such as breaking of tools or drilling a crooked hole, to prevent our further drilling before the above stated amount of water has been obtained, no charge will be made for the work done, but we are to have our privilege of drilling another of the same size under this contract.

"As verbally agreed with your Mr. Julian W. Vose, we further agree in case a small amount of water is obtained with the two and one half inch (2 1-2) test well, and if your Company should pump and make use of it, and we drive and drill a six inch well for you by steam power, no charge will be made for the 2 1-2 inch well. Otherwise we are to have the privilege of pulling up the pipe.

" Yours truly,
" B. F. Smith & Bro."

" We accept the above proposition.
" Vose & Sons Piano Co."

The plaintiffs testified that they drilled with a two and a half inch pipe to the depth of one hundred and five feet.   This drilling was abandoned, and the plaintiffs then, with a steam drill,

drilled through sand and clay to a depth of one hundred and
forty-one feet, when water was struck flowing at a rate in excess
of twenty-five gallons a minute.  This water was very salty and
had a great deal of sand in it.  The defendant was dissatisfied
with water of this character as being unsuitable for general use
in its business, and made known its dissatisfaction to the plain-
tiffs.  The plaintiffs thereupon continued drilling, driving a ten
inch pipe to bed rock at a depth of about one hundred and eighty
feet, then drove the pipe four feet into the bed rock, where the
drilling became very difficult, as appeared by the fact that one
hundred blows with a heavy hammer would not move the sharp
edged shoe or cutting band tempered on to the end of the pipe
more than one eighth to one fourth of an inch.  This the plain-
tiffs testified shut off the salt water and sand from above.  The
plaintiffs continued to drill a ten inch hole to a depth of two
hundred and twenty feet when salt water again was struck, a
witness for the plaintiffs, one Smith, testifying, that they drilled
the well about two hundred and twenty feet and found water,
but it was salty.  The plaintiffs continued drilling, driving a six
inch hole to the depth of two hundred and forty feet, when a
pumping test was made, and a flow of water was obtained in
excess of twenty-five gallons a minute, but it was very salt and
the defendant's agent testified that it was absolutely unsuitable
for any of the general purposes of the defendant's factory, and
of no use to the defendant.  The plaintiffs asserted that they
had performed their contract, and demanded payment, which
was refused by the defendant, who demanded performance.

For the purpose of showing the character of the water to be
furnished to the defendant under the contract, the defendant
offered to show oral conversations between its agent and an
agent for the plaintiffs before the execution of the contract
on which the action was brought, the conversations being had
with a view to the formation of the contract subsequently made,
in which the agent of the defendant told the agent of the plain-
tiffs that salt water would be unavailable for use in the defendant's
business, that it could not be used in the defendant's plumbing
plant, and that the water which the defendant required must be fit
to be put to the following uses, to wit: to be drunk by the defend-
ant's workmen, to be used by them for washing their persons, to

be used with pumice stone in rubbing down the varnish on the
defendant's pianos, to be used in rubbing with rotten stone, to be
used in automatic sprinklers, to be used for sprinkling granolithic
floors, where sprinkling was necessary every day on account of
the dust, and to be used in the mixing of glue; and that in reply
the agent of the plaintiffs undertook to furnish to the defendant
water suitable for such purposes.   This evidence was excluded
by the judge, and the defendant excepted.

The defendant offered to show statements as to the pur-
poses for which the water required by the defendant would be
used and as to the unavailability of salt water, substantially
identical with those set forth in the exception stated above made
by the agent of the defendant to the agent of the plaintiffs, and
that the defendant was induced to enter into the written con-
tract which the plaintiffs, being laymen, had prepared and sub-
mitted, and upon which the action was brought, by the promise
of the plaintiffs' agent that they would furnish water suit-
able for such purposes.   This evidence was excluded, and the
defendant excepted.

The defendant offered to show statements regarding the un-
availability of salt water for the defendant's uses, and the pur-
poses to which water required by the defendant would be put,
substantially identical with those set forth above, which were
made by the defendant's agent to the agent of the plaintiffs,
and that in reply thereto the latter requested the agent of the
defendant to test the water produced by a well constructed by
the plaintiffs at the premises of the Star Brewing Company, that
well being five hundred and ten feet deep and distant from the
defendant's premises fifteen hundred feet, the plaintiffs' agent
stating that the water obtained from the well was used by the
Brewing Company in making their beer and that it was good
enough for the defendant's use; that the agent of the defendant
did, as suggested, test the water produced by that well by drink-
ing some of it, and found it fit for that purpose; that thereafter
the agent of the defendant said to the agent of the plaintiffs, "If
you can furnish water good as the water of the Star Brewing
Company, I will make an arrangement with you to have the
water," and that the agent of the plaintiffs said that they would
furnish water equally good, but they might have to go down into

the earth more than five hundred and ten feet.   This evidence was excluded, and the defendant excepted.

For the purpose of showing the character of the water to be furnished to the defendant under the written contract, the defendant offered to show conversations before the making of the contract, in which the agent of the defendant stated that it could not use salt water for anything, and that if salt water was wanted it could be obtained by an ordinary duplex pump within a few feet of the surface.   This evidence was excluded, and the defendant excepted.

For the purpose of showing the character of the water under the written contract to be furnished to the defendant, the defendant offered to show that before the making of the contract the plaintiffs had attempted to induce the defendant to agree to pay as the work progressed, and that the defendant refused to agree to pay anything until water was furnished substantially of the character and kind furnished by the well of the Star Brewing Company.   This evidence was excluded, and the defendant excepted.

For the purpose of showing the character of the water to be furnished to the defendant under the written contract, the defendant offered to show conversations between the agents of the respective parties before the making of the contemplated contract in which it was pointed out by the plaintiffs that they might have to go below five hundred feet to get the kind of water required and that the work might cost the defendant two or three thousand dollars.   This evidence was excluded, and the defendant excepted.

The judge ruled, generally, that conversations had before the making of the contract were merged in it, that the word " water " must stand there as it was, without explanation of what occurred up to that time, unless it was altered subsequently by some oral agreement, and that the written agreement must stand just as it was.   To this ruling the defendant excepted.

Other evidence offered by the defendant was excluded by the judge, and at the close of the evidence the defendant asked for certain rulings which were refused by the judge.

The jury returned a verdict for the plaintiffs in the sum of $1,011 ; and the defendant alleged exceptions, of which those

not stated above have been made immaterial by the decision of the court.

*T. Parker,* for the defendant.

*A. L. Stinson,* for the plaintiffs.

BRALEY, J.   Upon omitting other provisions relating to the price and the depth that might be necessary to obtain the stated amount of supply, but not material to the principal question involved, the plaintiffs undertook by their contract " to procure water in the earth above the bed rock " on the defendant's premises by driving in the boiler room of the factory a pipe two and one half inches in diameter, but if a sufficient amount was not obtained then to " drill a well not less than six inches in diameter in the bed rock . . . until twenty-five gallons of water per minute is obtained."   They finally procured this volume, but the water was very salt, and generally unsuitable for use in the defendant's business, and, it being common knowledge that water in its natural state either may be fresh or salt in quality, the defendant contends that as the contract failed to designate the ordinary sense in which the parties must have used the term, oral evidence was admissible to explain and remove the uncertainty.   Unless fraud or mistake are shown, where the parties have put their contract in writing, there is a conclusive legal presumption, that it contains the entire agreement in which all previous verbal negotiations concerning the subject matter have been merged.   *Violette* v. *Rice,* 173 Mass. 82.   *DeFriest* v. *Bradley,* 192 Mass. 346.   But if any of the essential terms of the contract when applied to the transaction concerning which the parties dealt becomes ambiguous, oral evidence is relevant and admissible, not to construct a new agreement, but to ascertain what they understood by the one already made.   *Stoops* v. *Smith,* 100 Mass. 63.   *Hebb* v. *Welsh,* 185 Mass. 335.   *Buffington* v. *McNally,* 192 Mass. 198.   These familiar principles are undisputed, but the difficulty arises in their application, especially where the agreements are drawn by the parties or their business agents, who fail to use clear and exact language to express their mutual understanding.   It was the plaintiffs' interpretation, that they had fully performed their undertaking if the amount of water was procured, even if it was wholly unsuitable either because of saltness or impurity.   The

defendant then offered evidence, that during the preliminary negotiations the agent of the plaintiffs was informed and knew that its object in driving the well was to procure a supply of water for drinking and other uses in its manufactory, for either of which salt water could not be used, and would be unserviceable. This offer also included conversations between their respective agents in which the location of the factory, and the accessibility to salt water, which, if desired, could be obtained at a small expense, was spoken of, as well as a statement by the plaintiffs' agent, that they would furnish water of a quality equally good, when compared with water obtained for another customer, the quality of which was known to the defendant's agent, who thereupon said, that if this were done the defendant would be satisfied. The testimony was excluded, upon the ground that conversations previous to the making of the contract must be held to have been merged, and oral evidence in explanation of the use and meaning of the word "water" therefore was inadmissible. But, while this rule is undoubtedly correct, and should be inflexibly applied where no ambiguity or uncertainty appears, when the parties by the language they have employed leave their meaning obscure and uncertain when applied to the subject matter, then the expressions and general tenor of speech used in the previous negotiations, even if coming as they usually must from one or the other of the parties themselves, are admissible to show the conditions existing at the time the transaction was under consideration. See for illustrations *Bradford* v. *Manly*, 13 Mass. 139; *Hogins* v. *Plympton*, 11 Pick. 97 ; *Stoops* v. *Smith*, *ubi supra ;* *Miller* v. *Stevens*, 100 Mass. 519; *Pike* v. *Fay*, 101 Mass. 134; *Sweet* v. *Shumway*, 102 Mass. 365 ; *Keller* v. *Webb*, 125 Mass. 88; *New England Dressed Meat & Wool Co.* v. *Standard Worsted Co.* 165 Mass. 328; *Boak Fish Co.* v. *Manchester Assurance Co.* 84 Minn. 419. Their definition when thus ascertained furnishes the best interpretation of their contract, the construction of which still remains as a question of law for the court. *Atwood* v. *Cobb*, 16 Pick. 227, 232. *Stoops* v. *Smith, ubi supra.* *Bassett* v. *Rogers*, 162 Mass. 47. *Lynn Safe Deposit & Trust Co.* v. *Andrews*, 180 Mass. 527, 533. *Callender, McAuslan & Troup Co.* v. *Flint*, 187 Mass. 104. *Buffington* v. *McNally, ubi supra.* *American Malt-*

*ing Co.* v. *Souther Brewing Co.* 194 Mass. 89. *United States* v. *Peck,* 102 U. S. 64. *Smith* v. *Faulkner,* 12 Gray, 251, 255.

The evidence, therefore, was excluded wrongly, and as there must be a new trial at which the other questions raised by the exceptions may become immaterial, or be presented in another form, we do not consider them.

*Exceptions sustained.*