LESLIE G. LOOMIS et al., as Copartners under the Firm Name of L. G. LOOMIS & SON, Appellants, *v.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

Carriers — when railroad company liable to shipper for failure to deliver carload of produce at place named in bill of lading — when question as to meaning of name, used to designate place of delivery, for determination of the jury.

The plaintiffs are the shippers of a carload of potatoes and the defendant is the carrier. Plaintiffs claim that there was a negligent omission to make delivery at the proper place, and sue to recover the resulting damages. Whether a recovery may be sustained depends upon the meaning of the bill of lading, which contained, on a printed form used for that purpose, above the name of the city where the goods were to be delivered, the words " Grand St.," that being the name of a station in that city, in the yard of which was the warehouse of the firm to whom the bill of lading was indorsed and transmitted. These words were not written in the space reserved for the destination, but in the line above and under the name of the consignee. The goods were delivered at another station in the same city. On complaint being made, defendant's agent stated that he had arranged to have the car moved to destination by way of proper junction point and route. It did not reach the station Grand St. until the potatoes had deteriorated and the market therefor was lost. Upon consideration of these and additional facts, *held,* that if the words " Grand St." in the bill of lading are to be taken as descriptive of the residence of the consignee, there was no duty to deliver at the station of that name. If they are to be taken as part of the destination of the shipment, there was such a duty. The trial

judge properly held that the contract was ambiguous, and left it to the jury to say whether the meaning was that the car should be delivered at the Grand Street terminal.

*Loomis* v. *N. Y. C. & H. R. R. R. Co.*, 153 App. Div. 938, reversed.

(Argued March 17, 1915; decided April 13, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 23, 1912, reversing a judgment in favor of plaintiffs entered upon a verdict and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward P. White* for appellants. The case was properly submitted to the jury. (*Elting* v. *Bank of U. S.*, 11 U. S. 59; *First Nat. Bank* v. *Dana*, 79 N. Y. 108; *Theil* v. *Schonzeit*, 104 App. Div. 151; *Gardner* v. *Clark*, 17 Barb. 538, 551; *Grady* v. *Fazzolair*, 134 App. Div. 589.) There is evidence supporting or tending to support the verdict. The practical interpretation which the parties by their conduct have given to a written instrument is always admitted and is entitled to weight as to the intention of the instrument. (*Cavazos* v. *Trevino*, 6 Wall. 773; *Mayor* v. *N. Y. Ref. Con. Co.*, 8 Misc. Rep. 61; *Whittemore* v. *Sloat*, 9 How. Pr. 317; *Boyer* v. *M. S. Machine Co.*, 128 App. Div. 458; *Tanenbaum* v. *Feist*, 6 Misc. Rep. 368; *Woodruff* v. *Woodruff*, 52 N. Y. 53.)

*Edward Harris* for respondent. It is the duty of a carrier taking a shipment to its destination to notify the consignee of its arrival. The information as to the address of the consignee in case of carload shipments is conveyed by means of the way bill which is made out from the information contained in the contract of shipment, viz., the shipping order which is filed with the carrier receiving the shipment at the point of origin. (*Pelton* v. *Railroad Company*, 54 N. Y. 214; *Fenner* v. *Railroad Company*, 44 N. Y. 505.) It would be unfair and unsettling to the business interests of the state, of

which the railroads are a part, if what is apparently a
street address (the absence of a number does not make it
any less a street address), appearing in a bill of lading, can
in and of itself be lawfully interpreted by a court of justice
to mean a freight station on a railroad not mentioned in
the contract and the carrier held responsible in damages
for failure to divine such interpretation, because there hap-
pens to be a station which had the same name as the street
on which it was located in another state. (*Dwight* v.
*Ger. L. Ins. Co.*, 103 N. Y. 341; *Brady* v. *Cassidy*, 104
N. Y. 147.)

CARDOZO, J.   The plaintiffs are the shippers of a car-
load of potatoes.   The defendant is the carrier.   The
plaintiffs say that there was a negligent omission to make
delivery at the proper place, and they sue to recover the
resulting damages.   Whether a recovery may be sus-
tained, depends upon the meaning of the bill of lading.

The shipment was made at Lakeside, New York.   The
freight agent delivered to the plaintiffs a bill of lading, and
took back a shipping order.   Both were made out on the car-
rier's printed forms.   Each form has a blank space for
the name of the consignee, and another for the destina-
tion.   These blanks were filled by the freight agent as
follows:

Consignee:   L. G. Loomis & Son

Grand St.

| Destination | Place | Jersey City |
| | County | |
| | State | N. J. |

Below these blanks was another for the route, which,
however, was left unfilled.

The consignors named in the bill of lading are also named there as consignees. In fact, however, the shipment was intended for D. P. Reynolds & Co., to whom the bill of lading was at once indorsed and transmitted. D. P. Reynolds & Co. have their warehouse in Jersey City in the yard of the Grand Street station of the Lehigh Valley railroad. This Grand Street yard or station has existed for more than twenty years. To bring the car to Jersey City, the defendant had to forward it over the line of some connecting carrier. It chose the Pennsylvania railroad, which had a station in Jersey City about three-fourths of a mile away from the station of the Lehigh Valley. The car left Lakeside on June 12, 1907. It reached the Pennsylvania station in Jersey City on June 18. On learning of its arrival, D. P. Reynolds & Co. telegraphed the plaintiffs that the car was at the Pennsylvania station, and that they could not use it there. On the same day, June 18, the plaintiffs made complaint to the defendant's agent at Lakeside, and to the defendant's superintendent in New York. The superintendent answered by letter on June 20 that he had arranged to have the car " moved to destination via proper junction point and route." The car did not reach the Grand Street station till June 29. The purchaser then refused to accept it. The potatoes, which were of the last year's crop, had deteriorated, and the market season for old potatoes had passed. The plaintiffs lost the benefit of their bargain, and insist that the defendant must make good the loss.

To determine whether the defendant is at fault, we must ascertain the significance of the words " Grand Street " in the shipping order and the bill of lading. We held on a previous appeal in this case that those documents taken together constituted the contract. (*Loomis* v. *N. Y. C. & H. R. R. R. Co.*, 203 N. Y. 359, 366.) The plaintiffs on the first trial attempted to prove that there was an express direction to ship the potatoes over the Lehigh

Valley road. This evidence we held incompetent. We held, in an opinion by Judge VANN, that "a written contract to transport goods from one place to another, duly signed by both carrier and shipper, but silent as to the route," is not to "be varied by evidence of previous parol instructions to ship by a particular route." But in holding that the defendant had the right to go to the prescribed destination by any route it pleased, we did not attempt to determine what the prescribed destination was. We expressly left that question open. The defendant .chose to transport the car over the tracks of the Pennsylvania railroad rather than the Lehigh Valley. It had a right to make that choice. But the plaintiffs have proved, and the defendant concedes, that the car after reaching the Pennsylvania station could have been trans-shipped without trouble to the Grand Street station. We must now determine whether such a duty to trans-ship existed. If the words "Grand Street" in the bill of lading are to be taken as descriptive of the residence of the consignee, there was no such duty. If they are to be taken as part of the destination of the shipment, there was such a duty. The trial judge held that the contract was ambiguous, and left it to the jury to say whether the meaning was that the car should be delivered at the Grand Street terminal. The Appellate Division held that the contract was not ambiguous, and that the words "Grand Street" in the bill of lading had no other office than to indicate the residence of the consignee.

We think the meaning of the contract was a question for the jury. (*Stoops* v. *Smith*, 100 Mass. 63; *Streppone* v. *Lennon*, 143 N. Y. 626.) It is true that the words Grand street are above the line set apart for a description of the place at which delivery must be made. A photographic copy of the bill of lading shows, however, that the words "Jersey City," as written by the freight agent opposite the word "place," leave no room

on that line for anything else. The only other lines opposite the general heading of destination are set aside for the county and the state respectively. The words Grand street could not have been appropriately inserted there. It became necessary for that reason to write them above the line set aside for a statement of the place. If they had been thought of as descriptive of the consignee, the natural thing would have been to place them immediately under his name. This, however, was not done. The line below the consignee's name is blank. The words Grand street, instead of being written immediately under the name of the consignee, are written immediately above the designation of the place. It was impossible because of limitations of space to bring them together closer. We find thus in the form of the bill of lading some token of an intent to sever the words Grand street from the description of the consignee and to link them with the description of the destination of the car.

To this evidence supplied by the form of the bill of lading itself, other tokens of the same purpose may be added. This Grand Street station had existed for more than twenty years. It was one of the large and active stations in Jersey City. We may fairly infer that its existence was well known to men whose business it was to attend to the shipment of freight. Words of uncertain application may take from that knowledge a new color. It is true the defendant's freight agent, in the attempt to relieve himself from blame, is said to have told the plaintiffs, after the event, that he had never heard of such a station. He gave no testimony, however, on the trial, and even if he had testified, his interest in the outcome was such that his disclaimer of knowledge could have been rejected by the jury. We have, therefore, words in the contract which would convey to experienced railroad men the thought of an important terminal. It was for the jury to determine whether they were used with such a meaning.

Another guide to a correct solution of the problem was supplied to the jury through the practical interpretation of the contract alike by shipper and by carrier. The plaintiffs, on learning that the car had gone no farther than the Pennsylvania station, at once complained to the defendant that it should have been forwarded to Grand street. The defendant, responding to the complaint, acknowledged, in effect, its justice, and promised that the car would be trans-shipped to the proper destination. Trans-shipment was ultimately made without additional charge. Unless the bill of lading is free from ambiguity, we may find in the defendant's conduct an admission of its own default.

In these circumstances we ought not to hold that the failure to write the name of the terminal in the space reserved for the destination, controls, as a matter of law, the interpretation of this contract. We may view the case as if the plaintiffs had informed the defendant's agent in so many words that the destination was to be the Grand Street station, and had received back from the agent a bill of lading filled out in the form before us. We cannot say if this had been done, that reading the bill of lading, they ought as reasonable men to have understood that their instructions had not been followed. It is true the record does not show in so many words that they gave such instructions. The reason it does not, is because the defendant resisted the admission of testimony directed to that end. It was not held, when the case was here before, that the plaintiffs' instructions to the carrier were incompetent to identify a destination imperfectly described. It was held that they were incompetent to add to the contract an obligation to forward the shipment along one of several routes. This did not mean that they might not, if offered for some other purpose, be properly received. (*Brady* v. *Cassidy*, 145 N. Y. 171, 179.) The destination would, of course, have been identified more completely if the instructions had been proved.

That they were not proved is due, however, to the objection of the defendant, which cannot, therefore, be heard to complain of the omission. *(Sachs* v. *American Surety Co.,* 72 App. Div. 60, 65, 66; 177 N. Y. 551.) Enough remains, without them, to show that the meaning of the contract is doubtful, and to furnish a jury with some tests and standards by which to gauge the truth.

The order of the Appellate Division should be reversed, and the judgment of the Trial Term affirmed, with costs in both courts.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CUDDEBACK, MILLER and SEABURY, JJ., concur.

Order reversed, etc.