## Edward M. Corwin, Appellee, v. L'Anse Quarries Company et al., on appeal of Charles T. Lundstrom, Appellant.

## Gen. No. 23,607.

. EVIDENCE, § 322*—*when parol is admissible to show that guaranty did not refer to collection of notes.* Where a contract under which certain notes signed by a third person were to be accepted in part payment recited that: "Said notes which said * * * [defendant] guarantees, were acquired from said O'Brien for value and that said makers of notes are bona fide and have no defense whatever to refuse payment of same," the comma after the word "guarantees" renders the sentence ambiguous, and parol evidence is admissible to show that the guaranty did not refer to the collection of the notes but to their source, consideration and authenticity.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number. .
Vol. CCXI 20

Appeal from the Municipal Court of Chicago; the Hon. Charles N. Goodnow, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Reversed and remanded. Opinion filed May 15, 1918.

George W. Brown, for appellant.

Charles S. McNett, for appellee; Edward M. Burke, of counsel.

Mr. Presiding Justice Taylor delivered the opinion of the court.

This is an appeal by the appellant, Charles T. Lundstrom, from a judgment for $624 rendered in favor of the appellee, Corwin, against appellant Lundstrom, L'Anse Quarries Company, a corporation, and W. H. O'Brien, on two promissory notes made by L'Anse Quarries Company, indorsed by W. H. O'Brien and alleged to be guaranteed by appellant, Lundstrom. By a written contract of July 24, 1916, appellant agreed to purchase from appellee certain real estate for the sum of $9,700. At the time of the contract of purchase, appellant paid down $100 as earnest money. By the contract of purchase appellant agreed to take the property subject to a first mortgage of $5,000 at 5½ per cent. and the second mortgage of $2,100 at 6 per cent. The balance of the purchase price, that is, $2,500, was to be paid as follows: $900 in cash, $1,000 in certain bonds and $600 in the form of two notes. The provision in the contract as to the two notes—and which constitutes the basis of this contest—is as follows: "Also two notes of Two Hundred ($200.00) and Four Hundred ($400.00) Dollars respectively, executed by L'Anse Quarries Company and indorsed by W. H. O'Brien, President of said Company. Said notes are dated July 22nd, 1916, and are due respectively in three and four months from date of execution. Said notes which said Lundstrom guarantees, were acquired from said O'Brien for value and that said

makers of notes are bona fide and have no defense whatever to refuse payment of same."

The appellee offered in evidence the written contract and the two notes and rested. The appellant, after admitting the signing of the contract, offered to prove that appellee asked appellant to guarantee the notes by writing his name on them; that appellant refused to do so; that he told him he would not guarantee the notes in that way; that he said he knew the notes were bona fide notes but that he would not guarantee the collection of them or the payment of them; that at the time of the closing of the contract he, appellant, said that he would guarantee that the two notes were acquired from O'Brien for value and that the makers of the notes were bona fide and had no defense; that before closing the contract appellee visited O'Brien and made inquiry as to his financial responsibility and also of the L'Anse Quarries Company, and that appellee "said that he was satisfied that he was responsible"; that at the beginning and before the contract was signed appellee "had asked that the notes be guaranteed in the ordinary way, and that Lundstrom had refused to do this, and that the negotiations were then stopped"; that at the time of the execution of the contract "the subject-matter of the guaranty was discussed by Lundstrom and Corwin, and he said he understood that the notes were bona fide, and that O'Brien had no defense to make"; that in view of that conversation he refused to sign his name to the notes as a guarantee and that "he did not guarantee the collection or payment of them."

The trial judge, pursuant to objection by the appellee, refused to admit the evidence offered. Judgment was then entered on March 23, 1917, in the sum of $624 against L'Anse Quarries Company, W. H. O'Brien and Charles T. Lundstrom (appellant).

Practically the sole question in the case arises by reason of the words: "Said notes which said Lund-

strom guarantees, were acquired from said O'Brien for value and that said makers of notes are bona fide and have no defense whatever to refuse payment of same.'' As the words stand, they are ambiguous. The sentence which is to be interpreted is not well drawn; it is not grammatical, it cannot be parsed, and it does not make good sense. If the comma placed after the word ''guarantees'' were elided, a fairly reasonable construction of the meaning of the sentence would be that the defendant merely guaranteed (1) that the notes were acquired from O'Brien for value; (2) that the makers of the notes were not fictitious and (3) that they had no defense to a suit upon them. On the other hand, undertaking to interpret the words as they are, with the comma in place, the first six words become more or less incompatible with the rest of the sentence. There is, then, an obvious ambiguity. Of course, there are certain well-known principles of procedure, as well as of interpretation, to be borne in mind. The appellee, seeking to recover on the alleged guaranty must prove by a preponderance of the evidence that the writing expresses a definite intelligible promise of guaranty on the part of the appellee. He must put in evidence something more than an ambiguous writing which leaves the mind in doubt. The record shows that the appellant undertook to offer evidence in regard to certain circumstances which transpired at or about the time of the execution of the contract in question in order to show to what the word ''guarantees'' applied, and that the trial judge ruled it out as inadmissible. Evidently the trial judge excluded the evidence which was offered on the ground that it tended to vary the terms of the written instrument. There, however, is a well-known exception to the general rule, and where ''The purpose of all such evidence is to ascertain in what sense the parties themselves used the ambiguous terms in the writing which sets forth their contract'' (*Stoops v. Smith,* 100 Mass. 63) it is admis-

sible. It may be said that the words herein involved, as they stand, are intrinsically indefinite, incomplete as an expression of ideas and that, unless resort is had to extrinsic evidence, we are not capable of making a satisfactorily rational interpretation. The question is, what was the object of the word "guarantees." It becomes necessary, therefore, to identify that object. In many cases evidence has been admitted to show what physical objects were meant where the words in the various instruments were ambiguous. The principle has been applied frequently to descriptions in deeds, where there is generally some definite physical thing to which reference was intended, which was familiar to the parties but not to the court, and where "the words used must be translated into things and facts by parol evidence." *Doherty v. Hill,* 144 Mass. 468. In *Pfeifer v. National Live Stock Ins. Co.,* 62 Minn. 536, where a policy of insurance on two horses was canceled in writing so as to "cover one horse only," evidence was admitted to show which horse was intended. In *Ripon College v. Brown,* 66 Minn. 179, 68 N. W. 837, where the word "which" gave rise to an ambiguity, as to whether both or only one of two mortgages was assumed, evidence of the understanding of the parties was admitted for the purpose of interpretation. What was meant by the word "incumbrances" in a warranty deed was allowed to be shown in *Gill v. Ferrin,* 71 N. H. 421. In *Waldheim v. Miller,* 97 Wis. 300, evidence that the words "guarantee account of Bliven" meant a future account only, and not a past account, either of which they might have meant, was admitted. In the instant case it is not clear as to just what is guaranteed, and, so, if the parol evidence when admitted shows that the word "guarantees" refers to the obligation to pay, or if, on the other hand, it shows that it refers to the source, consideration, authenticity and that the maker has no defense, neither party is legally injured and only in that way may exact justice

be done.   That a fair and rational interpretation of the words actually used may be made, the extrinsic evidence is not only competent, but necessary.

Owing to the error of the trial court in rejecting the proffered evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*