Agnes, A.J.
This is a civil action in which the plaintiffs, The Congregation of the Sisters of Charity of the Incarnate Word, Houston, Texas (hereafter, “The Sisters of Charity”) and The Oblates of Mary Immaculate, Silver Springs, Maryland (hereafter, “The Oblates”) are suing the defendants on grounds of breach of promissory notes. The plaintiffs allege that the notes are due and payable with interest. The defendants, International Medical Equipment Collaborative (hereafter, “IMEC”), Thomas J. Keefe and Patricia A. Keefe, contend that, the documents in question are ambiguous and that they are not promissory notes, but rather mere understandings that encompassed the parties’ prior negotiations. The Plaintiffs have filed a motion for summary judgment. Mass.R.Civ.P. 56.
BACKGROUND
The essential facts are notin dispute. On March 20, 1998, Thomas J. Keefe executed a document captioned “Letter of Understanding” and “Promissory Note” with The Sisters of Charity. He signed as the President of IMEC. The document is an agreement between the parties whereby IMEC promised to pay The Sisters of Charity Two Hundred Thousand Dollars and 00/100 ($200,000.00) together with interest at a rate of 3% per annum. The principal was due and payable five (5) years from March 20, 1998, and the interest was to be paid in annual installments beginning one (1) year from March 20, 1998, and then annually thereafter, until the principal was paid. The agreement further provided that if any payment was not paid within thirty (30) days of being due, the entire unpaid balance of principal and interest would be due and payable.
On May 22, 1998, IMEC and The Oblates entered . into a similar agreement for the amount of One Hundred Thousand Dollars and 00/100 ($100,000.00). The agreement contained the same terms of payment, interest rate and default provision. Neither of the agreements referenced negotiations or other prior agreements, nor did the agreements include language that would make the payments thereon conditional. The agreements do not identify any issue or subject that is described as unresolved or left to further negotiation.
Prior to signing both agreements, the parties conducted meetings and exchanged letters. On March 10, 1998, Thomas J. Keefe wrote a letter to Sister Barbara Aires, the Coordinator of Corporate Responsibility for The Sisters of Charity addressing concerns that The Sisters of Charity had expressed at a prior meeting about the risks associated with the “loan.” Mr. Keefe’s letter primarily addressed the risk of investing money into IMEC. Mr. Keefe addressed this concern by stating that there was no guarantee regarding repayment of the “loans,” but adding that he did believe IMEC’s strategy would provide necessary funds for repayment.
After The Sisters of Charity had advanced funds to IMEC, there was correspondence between Mr. Keefe and Reverend Seamus Finn, of The Oblates, in which Reverend Finn expressed concern about the high risk of the investment by the Oblates. In Mr. Keefe’s letter dated April 29, 1998, Mr. Keefe addressed Reverend Finn’s concern by stating that the framework and strategies already in place would provide the necessaiy funds for repayment. Reverend Finn responded with a letter on May 13, 1998 informing Mr. Keefe and IMEC that The Oblates would make the “loan” to IMEC.
The Sisters of Charity and The Oblates sought to collect the loaned amounts on March 20, 1999 and May 28, 1999, respectively, and annually thereafter through written demands and oral communication. In response to the collection letters, Patricia A. Keefe sent two letters in reply. The first letter, dated April 7, 2000 stated that “IMEC is unable to repay the interest due,” and the second letter, dated February 20,2002, stated that “the funds are not available for us to send . . .’’To date, the Plaintiffs allege that they were never paid back any sums on the promissory notes, and the Defendants do not dispute this allegation.
DISCUSSION
1. Standard for Summary Judgment
The plaintiffs have moved for summary judgment against the defendants, IMEC, Thomas J. Keefe and Patricia A. Keefe, under Mass.R.Civ.P. 56 on the grounds that the agreements entered into on March 20, 1998 and May 22, 1998 were promissory notes, the interpretation of which is a question of law which is appropriate to resolve by summary judgment. Liberty Mut. Ins. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995); Freelander v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970). “Summary judgment lies when there is no genuine issue of material fact in dispute and *550 when the moving party is entitled to a judgment as a matter of law.” Id., at 706; Mass.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. The defendants argue that the alleged promissory note contained titles[1] that suggest they are not loans and that due to their facial ambiguity extrinsic evidence should be admissible.[2]
2. The Defendants’ Resort to Extrinsic Evidence Is Barred by the Parol Evidence Rule
The parties’ dispute is primarily over whether extrinsic evidence exists which would create a dispute of fact about the nature of the agreement between the parties, and whether, for that reason, summary judgment is inappropriate. To understand the issue, it is necessary to determine whether and when parol evidence is admissible. Generally, “[w]here the agreement of two contracting parties has been put in an unambiguous written form that the parties consider as final this final form is the contract and, therefore, evidence of negotiations leading up to this final form of the contract is immaterial.” Amerada Hess Corp. v. Garabedian, 416 Mass. 149, 155 (1993), quoting P.J. Liacos, Massachusetts Evidence 385 (5th ed. 1981).[3] Additionally, “when the parties have put their contract in writing, there is a conclusive legal presumption, that it contains the entire agreement in which all previous verbal negotiations concerning the subject-matter have been merged.” Smith v. Vose & Sons Piano Co., 194 Mass. 193, 199 (1907). “The parol evidence rule precludes evidence of earlier or contemporaneous discussions that would modify the provisions of a later integrated agreement ...” New England Financial Resources, Inc. v. Coulouras, 30 Mass.App.Ct. 140, 145 (1991). Furthermore, “parol evidence may not be admitted to contradict the clear terms of an agreement, or to create ambiguity where none otherwise exists.” Boston Car Co., Inc. v. Acura Automobile Div., Am. Honda Motor Co., Inc., 971 F.2d 811, 815 (1st Cir. 1992) (applying Massachusetts law).
It is settled law in Massachusetts that a contract provision is ambiguous “if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998); accord, Suffolk Construction Co., Inc. v. Lanco Scaffolding Co., Inc., 47 Mass.App.Ct. 726, 729 (1999) (quotation omitted) (“[C] on tract language is ambiguous where ‘an agreement’s terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and the obligations undertaken’ ”). However, “if any of the essential terms of the contract when applied to the transaction concerning which the parties dealt becomes ambiguous, oral evidence is relevant and admissible, not to construct a new agreement, but to ascertain what they understood by the one already made.” Smith, 194 Mass, at 199. A fundamental precept in the interpretation of contracts is “(t]he mere fact that parties disagree on the proper construction of contractual language, however, does not necessarily establish ambiguity.” Lumbermans Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
In the present case, the words in the body of the instruments signed by both parties are not ambiguous. Therefore, evidence of prior negotiations, communications or agreements is immaterial and may not be considered. Amerada Hess Corp., supra. Both notes state the amount of money being loaned, the terms of payment to which IMEC was to follow, the interest rate to be paid to the plaintiffs and the default provision for failure to make timely payments. The promissory notes do not reference any prior agreements and contain no other language that would make payment back of the loan conditional, as the defendant, IMEC, contends.
The defendants maintain that the parol evidence rule does not come into play unless the agreement is integrated, and points out that there is no language in the agreements in question that state they are “integrated.” “[A]n agreement will typically contain an ‘integration clause’ stating that it constitutes the parties’ sole agreement and that there are no oral or written representations outside of the agreement.” Cabot v. Cabot, 55 Mass.App.Ct. 756, 762 (2002). “The interpretation of an integrated agreement” or whether the agreement has merged “is a matter of law” for the Court to decide. Robert Indus., Inc. v. Spence, 362 Mass. 751, 755 (1973).[4] While the “integrated documents barrier may be penetrated by evidence tending to show that the documents are not, in fact complete,” there is no basis for such a finding in this case. UNTrust v. Henley & Warren Mgt., Inc., 40 Mass.App.Ct. 337, 342 (1996). Although the notes do not contain an integration clause, the determination of whether an agreement is integrated does not depend on the existence an integration clause. Cady v. Marcella, 49 Mass.App.Ct. 334, 338 (2000) (“Even in the absence of such a clause, where the written terms of a contract are not ambiguous on their face, extrinsic evidence is not admissible to contradict them”).
Here, the promissory notes are in writing, reference no prior writings or negotiations, and include all essential terms of a contract allowing the agreements to be interpreted as a whole. The caption heading, “Letter of Understanding,” does not create an ambiguity when the remaining language is considered. Correspondence leading up to the agreements suggests only that there were concerns about the wisdom of the loan and the ability of the defendants to repay it. Contrast, Charles River Mortgage v. Baptist Home of Mass., 36 *551 Mass.App.Ct. 277, 279 (1994). Parol evidence cannot be used to create an ambiguity where none would otherwise exist. Boston Car Co., Inc., 971 F.2d 811, 815 (1st Cir. 1992); New England Financial Resources, 30 Mass.App.Ct. 140, 145 (1991). Therefore, parol evidence is neither admissible to vary or contradict the agreements, nor is it admissible to interpret the terms of agreements, as they are not ambiguous. Thus, the plaintiffs have established there is no genuine issue of material fact in dispute and are entitled to summaiy judgment as to the defendant IMEC.
3. Individual Versus Corporate Liability of the Defendants
With regard to the issue of whether contractual liability against the defendants, Thomas J. Keefe and Patricia A. Keefe, in their individual capacities, the defendant, IMEC, has shown that IMEC is a New Hampshire corporation and is in “Active and Good Standing.” Furthermore, the fact that the defendant, IMEC, is not registered as a foreign corporation in the state of Massachusetts does not alter the fact that Thomas J. Keefe and Patricia A. Keefe did not sign the promissory notes in their capacity as individuals, but rather as agents of IMEC. This question is not ripe for adjudication by summaiy judgment. “(FJurther exploration of the facts is necessary.” See New England Financial Resources, 30 Mass.App.Ct. at 147, quoting Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 87 (1984).
ORDER
The plaintiffs’ motion for summaiy judgment is ALLOWED in part and DENIED in part. For the above reasons, the plaintiffs, The Sisters of Charity and The Oblates, motion for summary judgment is ALLOWED as to the Defendant, IMEC. The motion for summary judgment is DENIED as to the Defendants Thomas J. Keefe and Patricia A. Keefe.[5]

The defendants allege that the ambiguity exists due to the caption of the agreement which reads as follows: “Letter of Understanding between the Congregation of the Sisters of Charity of the Incarnate Word, Houston, TX and International Medical Equipment Collaborative Promissory Note.” The same language is found in the caption of The Oblates agreement.

The defendants contend that the two instruments are ambiguous, and therefore, prior oral and written communications between the parties should be admitted to clarify the agreement. These prior oral and written communications reference IMEC’s financial position, and indicate that IMEC’s ability to repay the loan depended on the success of certain equipment projects known as the “gray book” projects.

“It is . . . elementary that an unambiguous agreement must be enforced according to its terms.” J.F. White Contracting Co. v. Mass. Bay Transp. Auth., 40 Mass.App.Ct. 937, 938 (1996), quoting Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992).

“[T]he question of integration is one of fact reserved for the trial judge whose resolution of that issue will not be reversed unless clearly erroneous.” Starr v. Fordham, 420 Mass. 178, 188 n.8 (1995); see proposed Mass.R.Evid. 104(a).

The plaintiffs’ motion for summaiy judgment also requests that the defendant be sanctioned by the Court for frivolous or bad faith defenses. See G.L.c. 231, §6F. The defendants have not made “any claim, defense, setoff or counterclaim, ” that is “wholly insubstantial, frivolous and not advanced in good faith.” G.L.c. 231, §6F. Therefore, the Court denies the request for imposing sanctions on the defendants.